GROUND IMPROVEMENT TECH-
NIQUES, INC., and MK Ferguson Com-
pany, for the Use and Benefit of Ground
Improvement Techniques, Inc., Plain-
tiffs,

v.

The UNITED STATES, Defendant.

No. 12–57 C

United States Court of Federal Claims.

(Filed December 5, 2012)

Jeffrey A. Regner, United States Department of Justice, with whom were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Steven J. Gillingham, Assistant Director, Washington, DC, for defendant.

RCFC 17(a); Real Party in Interest for Claims Transferred to Creditors in Bankruptcy Case; No Privity of Contract Between the United States and Subcontractor of Prime Contractor.

## OPINION AND ORDER

Bush, Judge.

On April 3, 2012, the government filed Defendant's Motion to Identify/Join the Real Parties in Interest and Motion to Dismiss Plaintiff Ground Improvement Techniques. The court has before it defendant's motion (Def.'s Mot.), plaintiffs' response (Pls.' Opp.), and defendant's reply (Def.'s Reply). The "real parties in interest" motion primarily concerns a threshold matter, whether this suit has been brought by the real party or parties in interest pursuant to Rule 17(a) of the Rules of the United States Court of Federal Claims (RCFC), and if not, when ratification, joinder or substitution into the action of the real parties in interest should reasonably occur.

The court also addresses a second question, whether Ground Improvement Techniques, Inc. (GIT) is in privity of contract with the United States so as to permit a contract claim to be brought before this court in GIT's name. The privity issue was addressed in the briefing of defendant's real parties in interest motion filed April 3, 2012, but more thoroughly in the briefing of Defendant's Motion to Dismiss (Def.'s MTD) filed May 29, 2012, which seeks dismissal of the subject matter in its entirety. For that motion, brought under RCFC 12(b)(1) and RCFC 12(b)(6), the briefing includes plaintiffs' response (Pls.' Resp.), defendant's reply (Def.'s MTD Reply), plaintiffs' sur-reply (Pls.' Sur–Reply), and defendant's surreply (Def.'s Sur–Reply).[1]

Steven R. Schooley, Orlando, FL, for plaintiffs. Frederick Huff, Littleton, CO, of counsel.

---

1. The court also has pending before it a motion to intervene and plaintiffs' motion for sanctions. Both of these motions are denied but may be renewed when and if the real parties in interest participate in this litigation. *See infra.*

■ This opinion thus addresses two principal legal issues. The first is whether GIT is the real party in interest to pursue the claims asserted in the complaint. As discussed below, defendant's arguments prevail on this issue. The second, and somewhat related issue, is whether GIT is in privity of contract with the United States so as to permit a suit in GIT's name before this court. As discussed at some length in this opinion, the court finds that plaintiffs have not alleged facts that support an assertion that GIT is in privity of contract with the United States. For this reason, Counts I–III of the complaint before this court must be dismissed for lack of jurisdiction.[2] The court will not reach, however, the parties' arguments regarding Count IV of the complaint, which presents a claim in the name of the other plaintiff in this suit, MK–Ferguson Company.

## BACKGROUND [3]

### I. Contract Disputes and Litigation

In 1995, GIT became the subcontractor for MK–Ferguson Company (MK) on a United States Department of Energy project in Slick Rock, Colorado (the DOE project) for the remediation of uranium mill tailings.[4] Compl. ¶¶ 2–5, 6(k). During the course of performance, GIT's subcontract was terminated for default and the termination thereafter became the subject of litigation between MK and GIT in the United States District Court for the District of Colorado (the GIT–MK litigation). Id. ¶¶ 7(a), 9, Ex 3

at 3.11. During the course of that litigation, which, including various appeals, lasted at least twelve years, GIT filed for bankruptcy under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Western District of Pennsylvania (the GIT bankruptcy litigation). Id. ¶¶ 10, 14, 23; Def.'s Mot. Ex. A at 1.

As a result of GIT's bankruptcy, its claims against MK were transferred to five of GIT's creditors (the Secured Parties): PNC Bank, Fireman's Fund Insurance Company, Holland & Knight LLP, The Law Offices of Frederick Huff, and R.N. Robinson & Son, Inc., except for a dividend of $125,000 for GIT's unsecured creditors. Def.'s Mot. Ex. A at 8–9. The Secured Parties elected to continue litigation against MK in the name of GIT, rather than directing GIT to assign its claims against MK to the Secured Parties. Id. Exs. B–C; Pls.' Opp. at 11, Ex. A. GIT eventually obtained a large judgment against MK, which was partially satisfied by a surety in 2009. Compl. ¶¶ 21, 23, Ex. 3 at 3.9–3.10.

In 2001, MK, too, filed for bankruptcy under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Nevada (the MK bankruptcy litigation). Compl. ¶ 59. The unsatisfied portion of GIT's judgment against MK, and post judgment interest, were claims administered in MK's bankruptcy. Id. ¶¶ 60, 71(c), Ex. 6 at 6.20–6.21. The bankruptcy court required MK to file a certified claim with DOE to attempt to satisfy GIT's claims against MK

---

2. Privity of contract issues are often treated as jurisdictional by this court. See, e.g., S. Cal. Fed. Sav. & Loan Ass'n v. United States, 422 F.3d 1319, 1328 n. 3 (Fed.Cir.2005) (stating that "standing and privity of contract with the government are questions of subject matter jurisdiction") (citing Chancellor Manor v. United States, 331 F.3d 891, 899 (Fed.Cir.2003)); Normandy Apartments, Ltd. v. United States, 100 Fed.Cl. 247, 254–58 (2011) (dismissing a contract claim for lack of jurisdiction because the plaintiff was not in privity with the United States). Lack of privity may also be considered under a RCFC 12(b)(6) motion. See, e.g., Riviera Drilling & Exploration Co. v. United States, 61 Fed.Cl. 395, 400 (2004) (stating that "because authority is divided on the appropriate motion, RCFC 12(b)(1) or RCFC 12(b)(6), pursuant to which the court may dismiss contract claims for lack of privity, the court will now consider plaintiff's

contract claims under RCFC 12(b)(6)") (citations omitted). In this case, the court dismisses Counts I–III of the complaint for lack of jurisdiction based on GIT's lack of privity with the United States, but notes that the standard for dismissal under RCFC 12(b)(6) is met here as well.

3. This background information is provided for context only, and does not constitute fact finding by the court.

4. MK has undergone multiple corporate name changes, and will be referred to as MK even in reference to events which occurred after those name changes. The court notes that plaintiffs have omitted the hyphen in "MK–Ferguson Company" in the caption of the complaint. Compare Compl. at 1 with id. at 1 n.1, Ex. 2 at 2.5.

related to the DOE project. *Id.* ¶ 64, Ex. 4 at 4.13–4.15. MK did so, but the certification was contested as inadequate; the bankruptcy court again ordered MK to submit a certified claim to DOE for GIT's claims against MK. *Id.* Ex. 4 at 4.5, 4.8; Pls.' Resp. at 20; Def.'s MTD Reply Ex. C at 3. The bankruptcy court also ordered GIT itself to file GIT's claims with DOE's contracting officer under MK's name, and to certify its own claims, if MK did not file a certified claim in response to the court's order by July 25, 2011. Compl. Ex. 4 at 4.5.

MK never filed a second certified claim with the contracting officer for GIT's claims related to the DOE project. Pls.' Resp. at 22. GIT then filed a certified claim in MK's name with the DOE contracting officer. *Id.*; Compl. Ex. 4. GIT also filed a certified claim in its own name with the DOE contracting officer. Compl. Ex. 3. Having received no response from the contracting officer on its claims, GIT filed a "deemed denied" suit in this court for the claims submitted to the contracting officer in its own name and in MK's name (for the benefit of GIT). *Id.* ¶¶ 24, 70.

## II. Overview of the Parties' Arguments

### A. Real Parties in Interest

Defendant asserts that GIT is not the real party in interest to bring this suit against the United States for claims related to the DOE Project. The primary thrust of the government's argument is that when GIT went through bankruptcy, any claims it possessed against MK and the United States were transferred to GIT's creditors. Plaintiffs concede that certain of GIT's creditors may receive some benefit from this suit, but contend that post-bankruptcy GIT will be the major beneficiary of this action.

### B. Dismissal of Counts I–III of the Complaint

Defendant marshals an impressive array of arguments in support of the government's request that the court dismiss Counts I–III of the complaint. Most importantly, defendant argues that GIT is not in privity of contract with the United States. In support

of that argument, defendant notes that there is no express contract between GIT and DOE. Defendant also argues that MK was not the government's purchasing agent for the DOE project, so as to create privity of contract between GIT and the United States.

In furtherance of its privity argument, defendant asserts that the circumstances of the DOE project do not support plaintiffs' allegation that privity of contract between GIT and the United States was established. Defendant also contends that there was no implied-in-fact contract between GIT and the United States. Finally, defendant avers that GIT is judicially estopped from arguing that GIT and the United States are in privity of contract.

Plaintiffs argue, for their part, that previous court decisions have already decided the privity issue in their favor. Plaintiffs also rely on a number of board of contract appeal decisions in support of their argument that the circumstances of the DOE project support a finding of privity of contract between GIT and the United States. In particular, plaintiffs contend that MK acted as the agent of DOE. Finally, plaintiffs oppose the government's argument that they are judicially estopped from arguing that GIT and the United States are in privity of contract.

### C. Count IV of the Complaint

Because the court will not address the merits of defendant's challenge to Count IV of the complaint in this opinion, the court provides here a greatly truncated description of the parties' arguments. Defendant raises a jurisdictional challenge to the claim brought in the name of MK for the benefit of GIT because the government alleges that MK did not certify this claim. Defendant also argues that MK may not sponsor GIT's claim against the United States because MK's liability for these costs was discharged in MK's bankruptcy. Such sponsored claims, defendant argues, are only permitted when the prime contractor has already paid or remains liable to the subcontractor. In the government's view, MK no longer owes GIT for work performed on the DOE project, and may not sponsor a claim for GIT in this court.

Plaintiffs, on the other hand, assert that MK's claim was properly certified because the certification was provided at the order of the court presiding over the MK bankruptcy litigation. As to MK's liability to GIT, plaintiffs argue that GIT's claims against MK have been preserved and were not extinguished in the MK bankruptcy litigation. Thus, plaintiffs conclude that MK remains liable to GIT and may sponsor a claim to DOE. Because, in their view, MK's claim for the benefit of GIT was appropriately certified and sponsored, plaintiffs ask the court to deny defendant's motion to dismiss Count IV of the complaint.

## DISCUSSION

### I. Standards of Review

#### A. Real Party in Interest

█ Aside from certain exceptions not relevant here, "[a]n action must be prosecuted in the name of the real party in interest." RCFC 17(a)(1). This court has stated that "[w]ithin the context of RCFC 17(a), a real party in interest has been defined as the party that 'possesses the right to be enforced.'" *Grass Valley Terrace v. United States*, 69 Fed.Cl. 543, 546 (2006) (quoting *Mitchell Food Prods., Inc. v. United States*, 43 Fed.Appx. 369, 369 (Fed.Cir.2002)). When a plaintiff has been determined to not be the real party in interest for a claim, this court may allow the plaintiff a reasonable amount of time to cure this defect, either through substitution of the real party in interest, joinder or ratification. RCFC 17(a)(3); *see Aldridge v. United States*, 59 Fed.Cl. 387, 390 (2004) (requiring the submission of evidence, within a certain period of time, to determine if a bankruptcy trustee had abandoned a claim to the debtor-plaintiff or wished to assert the claim in this court for the benefit of the bankruptcy estate); *see also First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed.Cir.1999) (*First Hartford*) (stating that RCFC 17(a) "sets forth the broad and general principle that actions should be brought in the name of the real party in interest and that courts should be lenient in permitting ratification, joinder, or substitution of that

party"). Failure to prosecute an action in the name of the real party in interest, unless cured by the methods referenced in RCFC 17(a)(3), will result in the dismissal of the claim. *See, e.g., Norega v. United States*, 113 F.Supp. 463, 464 (Ct.Cl.1953); *Aldridge*, 59 Fed.Cl. at 390.

█ A challenge to a plaintiff's real party in interest status is not unlike a challenge to the complaint for failure to state a claim. *See, e.g., Whelan v. Abell*, 953 F.2d 663, 672 (D.C.Cir.1992) ("A real-party-in-interest defense can be raised as a Rule 12(b)(6) motion, stating, in effect, that because the plaintiff is not the person who should be bringing the suit, the plaintiff has 'fail[ed] to state a claim upon which relief can be granted.'" (quoting Fed.R.Civ.P. 12(b)(6))); *New York ex rel. Schneiderman v. Intel Corp.*, 827 F.Supp.2d 369, 374 (D.Del. 2011) ("[A] real-party-in-interest objection closely resembles the defense of failure to state a claim for relief because it presupposes that plaintiff does not have the substantive right to enforce the claim being made.") (internal quotations and citation omitted); *Runaj v. Wells Fargo Bank*, 667 F.Supp.2d 1199, 1205 n. 6 (S.D.Cal.2009) (stating that "district courts have permitted parties to raise Rule 17 objections in the context of a motion to dismiss under Rule 12(b)(6)") (citations omitted); *Aldridge*, 59 Fed.Cl. at 390 ("Lack of real-party-in-interest status is not a jurisdictional defect. The person before the court simply lacks a claim on which relief can be granted because that person does not own the claim.") (citation omitted). The weight of authority suggests that a real party in interest challenge does not implicate this court's jurisdiction over a suit. *See, e.g., First Hartford*, 194 F.3d at 1289 (distinguishing the inquiry into whether or not a plaintiff is the real party in interest from questions of jurisdiction or standing); *Fifth Third Bank of W. Ohio v. United States*, 55 Fed.Cl. 372, 376 (2003) (stating that "[t]he defense that a party is not the real party in interest, unlike standing, does not implicate jurisdictional requirements" (citing *First Hartford*, 194 F.3d at 1289)). For the court's purposes, here, defendant's challenge to GIT's real party in

interest status is most akin to a challenge to the complaint for failure to state a claim.[5]

## B. RCFC 12(b)(1)

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). However, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds,* 846 F.2d at 748 (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

The court may inquire into evidence outside the pleadings to establish jurisdictional facts. *Reynolds,* 846 F.2d at 747; *Rogers v. United States,* 95 Fed.Cl. 513, 514–15 (2010) (citations omitted). "Indeed, the court may, and often must, find facts on its own." *Martinez v. United States,* 48 Fed.Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461–62 (Fed. Cir.1998); *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991)), *aff'd in relevant part,* 281 F.3d 1376 (Fed.Cir.2002). When the government has challenged the merits of a claim by means of a motion filed

under RCFC 12(b)(1), this court may dismiss that portion of the complaint for failure to state a claim upon which relief can be granted, under RCFC 12(b)(6). *E.g., Stephanatos v. United States,* 81 Fed.Cl. 440, 442 (2008); *Cherbanaeff v. United States,* 77 Fed.Cl. 490, 492 (2007); *Esch v. United States,* 49 Fed.Cl. 631, 634 (2001) (citation omitted).

## C. RCFC 12(b)(6)

When considering a motion to dismiss for failure to state a claim, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. The court must inquire, however, whether the complaint meets the plausibility standard described by the United States Supreme Court, *i.e.,* whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002).

## II. Analysis

### A. GIT Did Not Retain Rights to Its Claims Against MK or the United States After Its Bankruptcy

The court documents relied upon by plaintiffs and defendant show that GIT's

---

5. The court may rely on relevant court documents submitted by the parties to resolve the real party in interest dispute. In a challenge to a complaint for failure to state a claim, for example, court documents are public records which, if undisputed, may be considered without converting a motion to dismiss under RCFC 12(b)(6) into a motion for summary judgment. *See, e.g., Wagstaff v. United States,* 105 Fed.Cl. 99, 103 (2012) (citing *Biomedical Patent Mgmt. Corp. v. Cal. Dep't of Health Servs.,* 505 F.3d 1328, 1331 n. 1 (Fed.Cir.2007); *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994)); *Boye v. United*

*States,* 90 Fed.Cl. 392, 416 (2009) (citations omitted), *aff'd,* 413 Fed.Appx. 239 (Fed.Cir.2011) (table). Many courts rely on court documents to resolve Rule 17(a) challenges to the "real party in interest" status of a plaintiff. *See, e.g., Runaj,* 667 F.Supp.2d at 1205 & n. 7. In this case, in particular, plaintiffs rely on numerous court documents attached to the complaint to support their claims against the United States; this reliance confirms that it is appropriate to allow defendant to rely on similar documents of undisputed authenticity for its challenge to plaintiffs' real party in interest status.

bankruptcy effected a transfer of GIT's claims against MK to the Secured Parties. First, GIT's Second Amended Plan of Reorganization, and a subsequent clarification of that plan, vest the rights of GIT to claims against MK in the Secured Parties. Def.'s Mot. Ex. A at 8–9; Pls.' Opp. Ex. A. Second, the Agreement Respecting Litigation shows that the parties entitled to net proceeds from GIT's claims against MK are the Secured Parties, not GIT. Def.'s Mot. Ex. C. Third, GIT's reorganization plan states that any amount of net proceeds in the GIT–MK litigation that exceeds the claims of the Secured Parties against GIT (and the $125,000 paid to GIT's unsecured creditors) shall be distributed to GIT's unsecured creditors. *Id.* Ex. A at 8–9. Fourth, during MK's bankruptcy litigation, the proceeds from any suit against MK related to GIT's work on the DOE project were described by the bankruptcy judge as belonging to the creditors of GIT, not GIT. *Id.* Ex. D at Tr. 37–38. Fifth, in the GIT–MK litigation, the district court observed that GIT's sole role was to facilitate the litigation, not to share in any proceeds that might be obtained, according to the explicit terms of GIT's reorganization plan. *Id.* Ex. E.

For all of these reasons, this court concludes that GIT's claims against MK are now held by the Secured Parties and that the Secured Parties are the real parties in interest for GIT's claims against MK related to the DOE project. Furthermore, the court finds that all of GIT's claims in this suit are founded on either: (1) the unsatisfied judgment and postjudgment interest against MK obtained by GIT; or (2) additional, related claims against MK and/or the United States which arise from the DOE project and subsequent dealings of GIT, MK and the United States. The claims presented in the complaint before this court thus arise from and are inseparable from the claims GIT brought against MK in the GIT–MK litigation. Furthermore, as noted above, the Secured Parties, not GIT, are the real parties in interest for all of these claims, whether the claims are described as claims against MK or against the United States.

The court is not swayed by plaintiffs' arguments to the contrary. The only substantive argument that addresses the effect of GIT's bankruptcy on its claims against MK and the United States is presented in three pages of plaintiffs' opposition brief. *See* Pls.' Opp. at 10–12. None of the arguments therein is supported by legal authority, and these arguments fail in the face of undisputed court documents that contradict each of plaintiffs' contentions. Plaintiffs assert that GIT's claims were not transferred to the Secured Parties. *Id.* at 10. The confirmed reorganization plan of GIT's Chapter 11 bankruptcy, and a subsequent clarification of the reorganization plan, show that transfer was effected. *See* Def.'s Mot. Ex. A at 8–9; Pls.' Opp. Ex. A. The fact that GIT was the nominal plaintiff during several years of litigation in multiple fora is precisely what the Agreement Respecting Litigation and GIT's reorganization plan required. *See* Def.'s Mot. Ex. C; Pls.' Opp. Ex. A. The court documents submitted by the parties and reviewed by the court contradict plaintiffs' contentions and confirm the court's conclusion that all of GIT's claims against MK and the United States were transferred to the Secured Parties.

Plaintiffs also argue that a clarification of the Second Amended Plan of Reorganization superseded the reorganization plan. Pls.' Opp. at 11. As defendant argues and the document shows, the order clarifying the plan merely permitted the Secured Parties to elect to prosecute their claims in the name of GIT. Plaintiffs have presented no documentary evidence that would support their bare, unsupported allegation that GIT is the real party in interest for any claims against MK and the United States. Indeed, the court proceedings referenced by the parties clearly show that GIT was and is a nominal plaintiff facilitating the litigation of the claims of the Secured Parties in both the GIT–MK litigation and the MK bankruptcy litigation.

Finally, plaintiffs argue that "a substantial portion of the GIT creditor obligations in the Agreement Respecting Litigation ha[s] been satisfied." Pls.' Opp. at 11. Assuming this statement is true, there still is no logical support for plaintiffs' pronouncement that

"[h]ence, GIT should ultimately be the major recipient of the remaining recovered damages in this matter." *Id.* The rights GIT had to its claims related to the DOE project were transferred to the Secured Parties and GIT's unsecured creditors, and were not retained by GIT. Def.'s Mot. Ex. A at 8–9.

 Thus, the court finds that Counts I, II, and III, all brought in the name of GIT, have not been shown to have been brought in the name of the real parties in interest to this suit. *See* Compl. ¶ 2 (naming GIT as plaintiff, yet making no mention of the Secured Parties). Furthermore, Count IV, although brought in the name of MK "for the use and benefit of" GIT, is a claim not for the benefit of GIT as a corporate entity, but for the benefit of GIT as the nominal plaintiff which prosecuted a claim for the Secured Parties in the GIT–MK litigation and which is asserting a claim for the Secured Parties in the MK bankruptcy litigation. Thus, even though Count IV presents a claim in MK's name, this claim, too, asserts claims which, at bottom, are vested in the Secured Parties, not in GIT.[6] Thus, the court cannot proceed to consider Count IV of the complaint unless the real parties in interest asserting the underlying claim in Count IV, *i.e.*, the Secured Parties, participate in this suit through a mechanism identified in RCFC 17(a)(3).

 It is unclear to the court why plaintiffs, when confronted by defendant's objection, would jeopardize their suit and fail to employ the simple remedies provided by RCFC 17(a)(3). Defendant argues that plaintiffs have had a reasonable amount of time to substitute, join, or obtain ratification from the Secured Parties. Def.'s Reply at 4. Defendant's informal objection was lodged on March 16, 2012, and its formal objection was filed on April 3, 2012. *Id.* Plaintiffs have now had more than eight months to submit documentary evidence to satisfy RCFC 17(a)(1). Although the court finds nothing to excuse plaintiffs' delay, the court believes that additional time would afford plaintiffs leniency. *See First Hartford,* 194 F.3d at 1289 (stating that "courts should be lenient in permitting ratification, joinder, or substitution of" real parties in interest). The court will therefore allow plaintiffs an additional two months to obtain from the Secured Parties documentary evidence as to whether the real parties in interest are participating in this suit and as to the representation chosen by the Secured Parties.[7] Should plaintiffs fail to produce such evidence in the reasonable time allotted them, any surviving count of the complaint in this case shall be dismissed without prejudice.[8]

## B. Privity

Although the court might not, as a matter of course, decide the privity issue simultaneously with the threshold real party in interest issue, plaintiffs allege that privity with the United States supports GIT's "real party in interest" status. Pls.' Opp. at 4–10. As stated *supra,* the court does not view the claims against the United States asserted in this suit in Counts I–III as distinct from the claims transferred to the Secured Parties in the GIT bankruptcy.[9] However, to the ex-

---

6. The nature of Count IV will be addressed *infra*.

7. The record of the GIT–MK litigation shows that it was not clear to the district court, in 2002, whether counsel for GIT had been selected and approved by the Secured Parties to obtain a judgment on their behalf. *See* Def.'s Mot. Ex. E at 5–6. As recently as 2009, there was a dispute over attorneys fees in that case. *See Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.,* No. 95–cv–02510–JLK–BNB (D.Colo. Dec. 21, 2009) (order dissolving competing attorneys' liens upon stipulation resolving dispute). Another reason to confirm the participation of the real parties in interest in this litigation is to ensure that counsel for nominal plaintiff GIT has been selected and approved by the Secured Parties, in order to avoid any further

confusion or disputes over potential attorneys fees.

8. "Dismissal of a claim under [RCFC] 17(a) for want of real party in interest thus does not operate on the merits, so that the real party can maintain an action at a later time." *Weiner v. United States,* 15 Cl.Ct. 43, 46 (1988).

9. The most logical reading of GIT's confirmed reorganization plan, as subsequently clarified, is that the "MK Case" (the GIT–MK litigation) encompassed any and all claims of GIT against both MK and the United States in relation to the DOE project, and that all of the claims arising from the GIT–MK litigation were transferred to the Secured Parties and were not retained by GIT. *See* Def.'s Mot. Ex. A at 4, 8–9 (transferring

tent that GIT has alleged that it possesses distinct claims against the United States, *i.e.*, claims related to the DOE project that do not arise from GIT's claims against MK, *see* Pls.' Opp. at 8–10, these "independent" claims depend entirely on GIT being in privity of contract with the United States.

Because the issue of privity has been introduced by plaintiffs as materially relevant to an analysis of GIT's "real party in interest" status, the court will address the privity issue in this opinion.[10] According to the complaint, "GIT either has a direct contract with DOE, or GIT has an implied-in-fact contract directly with DOE, or GIT has a direct contract with DOE by and through DOE's agent, MK." Compl. ¶ 31. The court will address each of these alternative privity arguments in turn.

### 1. "Direct Contract" Privity

Plaintiffs fail to explain what they mean by "direct contract" privity, although the term "direct contract" is used extensively in the complaint and in plaintiffs' briefs. *See, e.g.,* Compl. ¶¶ 7–8, 31, 41, 46; Pls.' Opp. at 4; Pls.' Sur–Reply at 2–4. If plaintiffs wish to suggest that GIT and DOE had an express written contract, the court notes that there is no reference to a written contract between GIT and DOE in the complaint. Instead, it appears that plaintiffs rely either upon contractual privity established by judicial imprimatur, or privity based on an implied-in-fact contract which is characterized by direct and independent payment obligations of DOE to GIT. Neither of these "direct contract" theories shows privity between the United States and GIT.

The first theory fails because the judicial commentary relied upon by plaintiffs, *i.e.,*

statements of the courts presiding over the GIT–MK litigation and the MK bankruptcy litigation, has no relevance to the privity issue in this litigation. The second theory is merely an implied-in-fact contract theory which, in plaintiffs' view, establishes the existence of a "direct contract" between DOE and GIT. *Cf.* Pls.' Resp. at 3 (discussing "direct implied-in-fact obligations between DOE and GIT"); *id.* at 4 (discussing "direct implied-in-fact contractual privity between DOE and GIT"); Pls.' Opp. at 5 (discussing "direct implied-in-fact contractual privity between DOE and GIT"). The court addresses here plaintiffs' "direct contract" arguments that are founded on judicial commentary, and reserves plaintiffs' "direct" implied-in-fact contractual privity theory for discussion in the "implied-in-fact contract" privity section of this opinion.

Plaintiffs argue that "issue preclusion" should prevent the United States "from contesting . . . Federal Court Orders holding the United States directly liable to GIT," as part of their argument that GIT is in privity with the United States on the DOE project. Pls.' Resp. at 6. Plaintiffs fail, however, to cite a single case in support of their issue preclusion argument; fail to enumerate the elements required for issue preclusion; and fail to explain how the facts of this case satisfy the elements required for issue preclusion. The court would be justified in rejecting plaintiffs' casual and unsupported reference to issue preclusion for these reasons alone. The court will nonetheless examine the judicial commentary relied upon by plaintiffs to determine whether or not the United States is precluded from arguing that GIT lacks privity with the United States as to the DOE Project.

---

to the Secured Parties "any and all claims, causes of action, right, title and interest in and to [the GIT–MK litigation]"). Even if a separate and distinct cause of action related to the DOE project could have been counted among the assets of pre-bankruptcy GIT, there is no indication that GIT scheduled such a claim or claims against the United States in its bankruptcy filings. There is authority which indicates that when a Chapter 11 debtor fails to disclose a cause of action as a scheduled asset, that asset then passes to the bankruptcy estate and does not return to the reorganized debtor. *See, e.g., In re Phoenix Petroleum Co.*, 278 B.R. 385, 405 (Bankr.

E.D.Pa.2001); *Tyler House Apartments, Ltd. v. United States*, 38 Fed.Cl. 1, 6 (1997). In light of the court's holding on the privity issue, however, the court need not decide whether the reorganized GIT retained ownership of any unscheduled, independent claims it seeks to assert against the United States.

**10.** The court's ruling on the privity issue necessitates the dismissal of Counts I–III of the complaint. The court's dismissal of these counts is a dismissal without prejudice under RCFC 12(b)(1). *See supra* note 2.

### a. The Elements of Issue Preclusion

Issue preclusion, or collateral estoppel as it is sometimes known, may be applicable when another court has already decided a legal issue that is currently before a new forum. *See, e.g., Mother's Rest., Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569 (Fed.Cir.1983) (*Mother's Restaurant* ) ("Under the doctrine of issue preclusion, traditionally called 'collateral estoppel,' issues which are actually and necessarily determined by a court of competent jurisdiction are conclusive in a subsequent suit involving the parties to the prior litigation.") (citation and footnote omitted). According to the United States Court of Appeals for the Federal Circuit, the essential requirements for the application of issue preclusion are:

> (1) the issues to be concluded are identical to those involved in the prior action; (2) in that action the issues were raised and "actually litigated"; (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded ... was fully represented in the prior action.

*Id.* (citations and footnote omitted). The fourth necessary element of issue preclusion " includes the requirement ... that a party has had a 'full and fair chance to litigate' the issues to be precluded." *Id.* at 1569 n. 4 (citing *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)).

### b. Whether the United States Was Fully Represented in the Court Cases Relied Upon by Plaintiffs

#### i. The Non–Party Issue

The court notes, first, that the court orders referenced by plaintiffs to establish "direct contract" privity between GIT and the United States were issued in suits where the United States was not a party. Def.'s Reply at 7; Def.'s MTD Reply at 4–5. Plaintiffs have not refuted defendant's assertion that the United States was not a party in the GIT–MK litigation, and plaintiffs have not alleged that the United States was a party in the MK bankruptcy litigation. *See* Pls.' Resp. at 4 (arguing only that DOE "actively

litigated against its direct liability to GIT in" the GIT–MK litigation). Defendant appears to argue that if the United States was not an actual party to a suit, any holdings in such a suit as to privity between GIT and the United States could not preclude the United States from contesting privity in this suit. *See* Def.'s MTD Reply at 4 (stating that the "statements concerning privity between GIT and DOE made by the magistrate in the [GIT–MK litigation] are not collateral estoppel against the Government because, [in part] ... the Government was not a party to that litigation"). Issue preclusion, however, may affect non-parties to a litigation, as well as the parties. *Mother's Restaurant,* 723 F.2d at 1572 .

As the Federal Circuit has stated, "[f]ederal courts have repeatedly held a non-party may be bound by a judgment if one of the parties to the earlier suit is so closely aligned with the non-party's interests as to be its virtual representative." *Id.* (citations omitted). A non-party may also be bound by a judgment if the nonparty has controlled or substantially participated in the control of a litigant's case before a court. *See id.* (citations omitted); *see also Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (noting that claim preclusion is "implicated when nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved"). These principles of collateral estoppel apply to the United States. *Montana,* 440 U.S. at 152–53, 99 S.Ct. 970.

Because a non-party is in some situations bound by issue preclusion arising from a prior suit, the first question before the court is whether the United States, a non-party in the proceedings cited by plaintiffs, was fully represented in those two suits so that it may be estopped from challenging plaintiffs' assertion that GIT is in privity of contract with the United States. This question is easy to answer in the MK bankruptcy litigation, but not quite as straightforward in the GIT–MK litigation. The court turns first to the MK bankruptcy litigation.

### ii. The MK Bankruptcy Litigation

As to the particular proceeding in the MK bankruptcy litigation referenced by plaintiffs, two parties contested the scope of GIT's claim against MK, in the particular circumstances of seeking reimbursement from the United States for that claim. Compl. Ex. 6. GIT asserted that its claim against MK included both the unsatisfied amount of its judgment against MK (obtained in the GIT–MK litigation) as well as postjudgment interest, and that any claim presented to the United States should include both principal and interest. *Id.* at 6.3–6.4, 6.6. The Plan Committee, which represents the general unsecured creditors of MK, took the position that GIT should only be able to assert its claim against MK, and its identical claim against DOE, in the amount of GIT's unsatisfied judgment against MK, without any postjudgment interest. *Id.* at 6.8, 6.11 & n.6. The court deciding the issue held that GIT could assert both the unsatisfied judgment amount, as well as postjudgment interest, in its claim presented to DOE. *Id.* at 6.20–6.21.

▮ Plaintiffs have not alleged that the United States was fully represented in the MK bankruptcy litigation. Indeed, the particular proceeding cited by plaintiffs was a dispute between MK creditors whose interests can only be seen as adverse to the United States. Neither of the parties to the proceeding would benefit if the United States prevailed against any claims asserted by GIT. To the contrary, if GIT prevailed against DOE, GIT, as nominal plaintiff for the Secured Parties, would obtain a judgment that would benefit the Secured Parties and perhaps also benefit GIT's unsecured creditors. The opposing party in the proceeding, the Plan Committee, would also benefit if GIT prevailed against DOE. In that scenario, the bankruptcy estate would be able to preserve a larger amount of assets for the general unsecured creditors of MK because GIT's claim against MK would be satisfied by the United States, not by the limited MK assets set aside for the MK creditors. Thus, the interests of the parties in the proceeding cited by plaintiffs were not closely aligned to those of the United States – they were *adverse* to the United States. In addition, there has been no allegation that the United States controlled any of the parties in the MK bankruptcy litigation.

According all reasonable inferences to the facts alleged by plaintiffs, the United States was not fully represented in the MK bankruptcy litigation. Thus, no court pronouncements in that litigation could give rise to issue preclusion against the United States in this case.[11] *Mother's Restaurant*, 723 F.2d at 1569 & n. 4. Plaintiffs' reliance on statements of the court in the MK bankruptcy litigation is unavailing as to the issue of privity between GIT and the United States.

### iii. The GIT–MK Litigation

Viewed through the lens of a RCFC 12(b)(1) challenge to the complaint, the court accords all favorable inferences to plaintiffs' allegations of fact. Plaintiffs allege that the United States "actively litigated against its direct liability to GIT in" the GIT–MK litigation. Pls.' Resp. at 4. The complaint cites to attached documents which tend to show that the United States had some role in funding and authorizing certain procedural steps taken by MK in the GIT–MK litigation. *See* Compl. ¶¶ 10, 15, 18. Although the court makes no findings of fact on this issue, in according all favorable inferences to plaintiffs, the United States may have been "fully represented" in the GIT–MK litigation. *See Mother's Restaurant*, 723 F.2d at 1569. Thus, the fourth element necessary for issue preclusion cannot be determined to be absent when the standard for RCFC 12(b)(1) is applied to the complaint. Assuming, solely for the purposes of the 12(b)(1) inquiry, that the United States was fully represented in the GIT–MK litigation, the court now turns to

11. The court also agrees with defendant that there is no holding, or even *dicta,* in the excerpts from the MK bankruptcy litigation cited by plaintiffs which may be read to establish that GIT and the United States are in contractual privity. *See* Def.'s MTD Reply at 5 (citing Compl. Ex. 6 at 6.16 n.9). Thus, issue preclusion is not warranted for at least one other reason – no finding on privity was "necessary and essential to the resulting judgment" in the MK bankruptcy litigation. *Mother's Restaurant,* 723 F.2d at 1569.

two other elements of issue preclusion required by *Mother's Restaurant*.

### c. Whether the Privity Issue Was Litigated in the GIT–MK Litigation, and Necessary to the Holding in That Case

Plaintiffs' reliance on statements by the court in the GIT–MK litigation for the purposes of issue preclusion is unpersuasive when other required elements of issue preclusion are considered. The excerpts of various court orders quoted by plaintiffs do not once use the term "privity." *See* Pls.' Opp. at 5–6; Pls.' Resp. at 3–4. If there is a holding in the GIT–MK litigation regarding privity of contract between the United States and GIT in the DOE Project, it has not been cited to the court. The statements of the court in the GIT–MK litigation relied upon by plaintiffs do not support plaintiffs' issue preclusion argument as to "direct contract" privity.

Furthermore, as defendant points out, in the context of the GIT–MK litigation a jury instruction was issued informing the jurors that there was no contract between GIT and DOE and therefore, GIT could not sue the United States directly. Def.'s Mot. at 19. Plaintiffs do not dispute this fact. In such circumstances, the alleged "holding" in the GIT–MK litigation, that GIT is in privity with the United States, was *not* "necessary and essential to the resulting judgment," *Mother's Restaurant*, 723 F.2d at 1569, so as to compel issue preclusion in this suit. There is no reasonable inference that a court in the GIT–MK litigation determined that GIT is in privity with the United States.[12]

For all of these reasons, the United States is not precluded by prior holdings in the GIT–MK litigation from arguing that GIT lacks privity of contract with the United States. To the extent that plaintiffs rely on issue preclusion to persuade this court that GIT is in "direct contract" privity with the United States, plaintiffs have failed to allege facts necessary to establish "direct contract" privity with the United States. The court

now turns to plaintiffs' contentions regarding implied-in-fact contract privity.

### 2. "Implied–in–Fact Contract" Privity

#### a. Distinguishable Energy Board Cases

Plaintiffs rely on three Energy Board of Contract Appeals (EBCA or board) cases to establish that the circumstances of the DOE project reflect the existence of an implied-in-fact contract between GIT and the United States. *See* Pls.' Opp. at 6–8; Pls.' Resp. at 7–14. The cited cases are *L.O. Warner, Inc.*, EBCA No. 351–2–86, 86–3 BCA ¶ 19207 (Aug. 13, 1986); *McMillin Bros. Constructors, Inc.*, EBCA No. 328–10–84, 86–3 BCA ¶ 19179 (July 11, 1986); and *Arntz Contracting Co.*, EBCA No. 187–12–81, 84–3 BCA ¶ 17604 (June 25, 1984), *aff'd*, 769 F.2d 770 (Fed.Cir.1985). These cases all date from the mid1980s and are not binding on this court. Most importantly, each of these cases was filed by a subcontractor relying on a "flow-down" contract clause permitting the subcontractor to file appeals of contracting officer decisions directly with the EBCA. *See L.O. Warner*, 86–3 BCA ¶ 19207 (noting that the appeal of the contracting officer's decision in that case "was filed under a flow-down disputes clause in Appellant's contract with a prime Government contractor"); *McMillin Brothers*, 86–3 BCA ¶ 19179 (noting that privity of contract in that case was supported by "an authorized flow-down 'Disputes' clause"); *Arntz Contracting*, 84–3 BCA ¶ 17604 (noting that the subcontract in that case "included a 'flowdown' Disputes clause which afforded the subcontractor direct access to the [EBCA]"). Because the holdings on privity in those cases relied on a pivotal contract clause that is undisputedly absent from the factual circumstances of this case, the court rejects the cases relied upon by plaintiffs as unpersuasive authority for the issue of privity in this case.

This court has previously rejected an overbroad application of the privity holdings in these EBCA cases. *Lockheed Martin Corp. v. United States*, 50 Fed.Cl. 550, 561-62

---

12. There is no need for the court to reach defendant's other arguments: (1) that the statements of the court relied upon by plaintiffs are mere *dicta*; (2) that plaintiffs are judicially estopped from arguing privity between GIT and the United States; and (3) that plaintiffs cannot rely on issue preclusion because the district court did not have jurisdiction to decide the privity issue. Def.'s MTD Reply at 3–4, 10–12.

(2001) (*Lockheed Martin I* ) ("It is also important to recognize that all of the [EBCA] cases cited by the Plaintiffs involved the presence of a flow-down disputes clause that contractually guaranteed the subcontractor the right to direct appeal against the Government. That factor, in and of itself, makes for a strong case that the parties intended the subcontractor to have the contractual right to bring direct action against the Government."), *aff'd,* 48 Fed.Appx. 752 (Fed.Cir. 2002) (*Lockheed Martin II* ). In *Lockheed Martin I,* this court was unpersuaded that these EBCA cases stated a general rule for subcontractor privity in the absence of a flow-down disputes clause. *See id.* at 561 (noting that in the EBCA cases, the "Board[ ] looked to *contractual* history and *provisions* to determine the parties' intent to create privity") (emphasis added). The court agrees with the reasoning in *Lockheed Martin I* and rejects these three EBCA cases as persuasive authority for the privity issue in this case.

### b. The *Johnson Controls* "Otherwise in Privity" Factors

The court observes that there is binding precedent which directly addresses the issue of privity between a subcontractor and the United States in Contract Disputes Act (CDA) cases,[13] and that this precedent is found in *United States v. Johnson Controls, Inc.,* 713 F.2d 1541 (Fed.Cir.1983). Plaintiffs' discussion of *Johnson Controls* is flawed. It is true, as plaintiffs assert, that one of the EBCA cases relied upon by plaintiffs distinguished *Johnson Controls. See* Pls.' Resp. at 13–14 (citing *L.O. Warner,* 86–3 BCA ¶ 19207). It is not true, however, that all of the factual distinctions relied upon by the EBCA are present in this case.

The EBCA noted the importance of a flow-down disputes clause that permitted the board to find privity in that case:

> The Court in *Johnson Controls* focused on four factors which it found indicated that the subcontractor was, in that case, not authorized to directly appeal a contracting officer's decision to the Armed Services Board of Contract Appeals. In this case, three of the four *Johnson Controls* factors support the opposite conclusion, *i.e.,* the subcontractor was authorized to bring a direct appeal[.] [The second of the three factors is the fact that] the subcontract included a flow-down disputes clause[.]

*L.O. Warner,* 86–3 BCA ¶ 19207 (citation omitted). The court finds that plaintiffs' reliance on *L.O. Warner* to avoid the controlling precedent of *Johnson Controls* is misplaced because GIT's subcontract, undisputedly, did not contain a flow-down disputes clause. Although plaintiffs have provided no independent analysis of the pertinent *Johnson Controls* factors, the court must now do so.

 Turning now to the applicable *Johnson Controls* factors,[14] these factors have sometimes been described as the "otherwise in privity" factors used to determine whether there is privity between a subcontractor and the United States. *See RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1139 (6th Cir.1996) (citing *Johnson Controls,* 713 F.2d at 1553); *Lockheed Martin II,* 48 Fed.Appx. at 755 ("Johnson Controls delineated four factors in the 'otherwise in privity' test to be considered in determining whether the subcontractor could sue under the CDA . . . ."). [15] The four factors were originally presented in *Johnson Controls* to explain why the Federal Circuit found no privity of contract, in that case, between the subcontractor (Johnson) and the United States:

---

**13.** The Contract Disputes Act of 1978, 41 U.S.C.A. §§ 7101–7109 (West 2011), permits federal contractors to appeal contracting officer decisions on their claims to the boards of contract appeals or to this court.

**14.** *Johnson Controls* also discusses privity that might arise when a prime contractor acts as the agent of the United States. The agency theory of privity discussed in *Johnson Controls* will be addressed *infra.*

**15.** Although *Lockheed Martin II* is a non-precedential opinion issued by the Federal Circuit, it provides a concise and apt description of a legal test pertinent to this case. The court cites *Lockheed Martin II* not for its holding or its precedential value, but for its concise description of the relevant privity inquiry.

(1) the government and Johnson never entered into a direct contractual relationship; (2) the "ABC" clause, contained in both the prime contract and the subcontract, specifically disclaimed a contractual relationship between the government and Johnson; (3) [the prime contractor] was required to obtain a Miller Act payment bond, which provided a recourse by the subcontractor other than a direct appeal; and (4) there is no provision in any of the contract documents that clearly authorizes a direct appeal by a subcontractor.

*Johnson Controls,* 713 F.2d at 1552–53. These same four *Johnson Controls* factors have been restated in a more general way by the United States Court of Appeals for the Sixth Circuit:

(1) whether the subcontractor and the government had ever had a direct contractual relationship; (2) whether the subcontract with the prime contractor contained an "ABC" clause (*i.e.,* an express disclaimer of privity of contract between the subcontractor and the government); (3) whether the prime contractor was required to obtain a Miller Act payment bond, thereby providing a recourse by the subcontractor other than a direct appeal; and (4) whether there was any provision in any of the contract documents that clearly authorized a direct appeal (to the Board of Contract Appeals) by the subcontractor.

*RMI Titanium,* 78 F.3d at 1139 (citing *Johnson Controls,* 713 F.2d at 1553). Following this precedent, a fundamental issue in this case is whether the Johnson Controls "otherwise in privity" factors support privity of contract between GIT and the United States.

■■■■ It is evident that the four "otherwise in privity" factors must be considered, but not all cases are like *Johnson Controls,* where *all four factors* weighed against a finding of privity. Other scenarios, such as here, where only some, but not all, of the factors weigh against a finding of privity, require the application of the "otherwise in privity" factors and other guidance in *Johnson Controls.* It is clear from the Federal Circuit's opinion, for example, that privity of contract between the United States and a subcontractor is the exception, not the rule. *See Johnson Controls,* 713 F.2d at 1550 (stating that the issue in that case was whether Johnson fell into "any recognized exception to the well-entrenched rule that a subcontractor cannot bring a direct appeal against the government"). It is also clear that the inquiry as to "otherwise in privity" is the same as an inquiry as to the existence of an implied-in-fact contract. *See id.* (stating that "the no-privity rule is synonymous with a finding that there is no express or implied contract between the government and a subcontractor"). The most important aspect of that inquiry, in this court's opinion, is whether the four "otherwise in privity" factors show an intent of the parties to create privity between the subcontractor and the United States so as to permit a suit in this court or an appeal before a board of contract appeals. *See id.* at 1552 (presenting the court's discussion of the "otherwise in privity" factors in a section titled "Intent of the Parties"); *Lockheed Martin I,* 50 Fed.Cl. at 566 ("[For] the central *Johnson Controls* analysis[,] [b]ecause waivers of sovereign immunity must be strictly construed, there must be a clear contractual intent to establish privity between the Government and the subcontractor.").

A close reading of the Federal Circuit's summary of its holding as to the privity issue in *Johnson Controls* reveals the purpose of the consideration of the four "otherwise in privity" factors:

In summary, we conclude that direct subcontractor appeals are not authorized by the terms of the contract documents [in this case].... However confusing the various contract provisions are (in both the prime and subcontracts), we do not think it likely or reasonable that the parties contemplated direct subcontractor appeals in the absence of an explicit statement authorizing such a procedure. This is particularly true in light of the fact that direct subcontractor appeals have only been permitted in rare, exceptional cases; it is therefore unlikely that the parties would agree to such an unusual procedure by using such ambiguous language. As a consequence of this

conclusion, we offer no opinion on whether the board could have properly asserted jurisdiction over a direct subcontractor appeal where the contract documents clearly authorize such a procedure.

713 F.2d at 1556 (footnote omitted). As this passage shows, the "otherwise in privity" inquiry obliges the court to determine whether or not direct subcontractor appeals of contracting officer decisions are authorized by the contract documents governing the government project. *See id.* With this precedent firmly in mind, the court now turns to the question of whether GIT is in privity of contract with the United States. The first factor is whether GIT and DOE ever had a direct contractual relationship.

Plaintiffs do not address whether GIT and DOE ever had a direct contractual relationship so as to satisfy the first of the *Johnson Controls* "otherwise in privity" factors. *See* Pls.' Resp. at 13–14 (referencing *Johnson Controls* but not discussing the first "otherwise in privity" factor); Pls.' Sur–Reply at 4 (same). Two types of direct contractual relationships were identified in *Johnson Controls*: (1) where the subcontractor's contract with the prime contractor has been assigned to the United States; and (2) where direct dealings between the subcontractor and the United States are alleged to have created privity of contract. 713 F.2d at 1553. Neither of these circumstances has been alleged by plaintiffs in this case. Furthermore, when contract documents identify the subcontractor as a "subcontractor," this is seen as obvious evidence that there is no direct contractual relationship between the subcontractor and the United States. *Id.* Here, GIT is identified as a subcontractor in its subcontract with MK, Compl. Ex. 1 at 1.1, and there is no reasonable inference that GIT had a direct contractual relationship with the United States. For these reasons, the first "otherwise in privity" factor weighs against plaintiffs' allegation that GIT is in privity of contract with the United States.

As to the second factor, the question is whether GIT's subcontract with MK, and MK's contract with DOE, contained an express disclaimer of GIT's privity with the United States, also known as an "ABC" clause.[16] *See Johnson Controls,* 713 F.2d at 1553; *see also RMI Titanium,* 78 F.3d at 1139. Plaintiffs assert that "[i]n the present case, there are no ABC clauses disclaiming privity between GIT and DOE." Pls.' Resp. at 14. Upon review of the contractual documents attached to the complaint by plaintiffs, the court agrees with plaintiffs that there is no "ABC" contract clause expressly disclaiming privity of contract between GIT and DOE. Thus, the second "otherwise in privity" factor does not clearly weigh against plaintiffs' allegation that GIT and the United States are in privity.

Notwithstanding the absence of the aforementioned ABC clause, the court notes that DOE consented to GIT's subcontract with MK, and that this subcontract was not binding until written consent of DOE had been received. Compl. Ex. 1 at 1. 14, Ex. 4 at 4.40. In its written consent, DOE included this language:

> This consent shall in no way relieve MK[ ] of any obligations or responsibilities it may otherwise have under the contract or law, [and] shall neither create any obligation of the Government to, or privity of contract with the subcontractor. . . .

*Id.* Ex. 4 at 4.40. Thus, although the actual contracts in this case did not include an ABC clause, the written consent required to make GIT's subcontract binding included an ABC statement. Although this fact does not indicate that the second "otherwise in privity" factor weighs against the existence of privity between GIT and the United States, it certainly is determinative of the intent of the United States. From this statement, it is clear that the United States did not intend to create privity of contract with GIT.

The third "otherwise in privity" factor, whether the prime contractor was required

16. The typical express disclaimer of privity clause states that where the government is A, the prime contractor is B, and the subcontractor is C, there is a contractual relationship between A and B, and a contractual relationship between B and C, but no contractual relationship between A and C. *See Johnson Controls,* 713 F.2d at 1544.

to obtain a Miller Act payment bond,[17] examines whether a subcontractor has alternative avenues of recourse if the prime contractor does not meet its payment responsibilities. *Johnson Controls*, 713 F.2d at 1553-54. If the prime contractor is required to furnish such a bond, this is evidence that the contract does not authorize direct subcontractor appeals against the United States. *Id.* Here, plaintiffs assert that MK was not required to furnish a Miller Act bond, and this assertion is not rebutted by the United States. Pls.' Resp. at 14. Thus the third "otherwise in privity" factor does not clearly weigh against plaintiffs' allegation that GIT and the United States are in privity of contract.

The court notes, however, that there is no indication in the documents relied upon by plaintiffs that MK's contract for the DOE project was subject to the Miller Act. *See* Compl. Ex. 2 at 2.7, Ex. 4 at 4.39. In such circumstances, the fact that MK did not supply a Miller Act bond is not a vitally important fact for the "otherwise in privity" inquiry. In addition, although plaintiffs repeatedly refer to GIT's "Miller Act" bonds, Compl. ¶¶ 1–2, 6(a),[18] whether GIT supplied payment bonds to MK is not relevant to the third "otherwise in privity" factor – that factor examines whether GIT had recourse to a surety to assure payment for GIT's work if MK could not pay sums due under the subcontract. If GIT did indeed have an alternate recourse in that scenario, such a fact would weigh against privity of contract between GIT and the United States. *See Johnson Controls*, 713 F.2d at 1553–54. Overall, the fact that GIT provided payment bonds does not contribute anything to the privity inquiry. *See Lasker-Goldman Corp. v. United States*, 4 Cl.Ct. 89, 91 (1983) (rejecting a similar argument in that case because the furnishing of a payment bond by a subcontractor does not, in itself, show that a subcontractor's sole recourse for its contract claim is against the United States (citing *Johnson Controls*, 713 F.2d at 1555)).

Finally, as to the fourth "otherwise in privity" factor, the court has already noted that no contract provision in the contract documents relied upon by plaintiffs clearly authorizes a subcontractor to directly appeal a contracting officer's decision to a board of contract appeals or this court. GIT does not enjoy the right to directly sue the government that was afforded all of the subcontractors in the EBCA cases noted in plaintiffs' briefs. Pls.' Opp. at 6–8; Pls.' Resp. at 7–14. In the absence of a clear authorization for direct subcontractor appeals, the fourth factor weighs against plaintiffs' allegation that GIT is in privity of contract with the United States. *See Johnson Controls*, 713 F.2d at 1553, 1556; *Lockheed Martin I*, 50 Fed.Cl. at 560–61 (noting that in the EBCA cases, the flow-down disputes clause allowing direct subcontractor appeals to the board was "pivotal" and made a "strong case" for privity). The court finds the holding in *Johnson Controls* to be apt in a case, such as here, where there is no contractual authorization for a direct subcontractor appeal of a contracting officer's decision: "[W]e do not think it likely or reasonable that the parties contemplated direct subcontractor appeals in the absence of an explicit statement authorizing such a procedure." 713 F.2d at 1556.

Weighing the four "otherwise in privity" factors in the circumstances of this case, and affording all reasonable inferences to plaintiffs' allegations of fact, direct subcontractor appeals of contracting officer decisions were not authorized by the contract documents governing the DOE project. Together, the four "otherwise in privity" factors do not show "contractual consent" to privity of contract between GIT and the United States. *Johnson Controls*, 713 F.2d at 1556. Plaintiffs' allegations of fact, under the controlling authority of *Johnson Controls* and its "otherwise in privity" test, do not support an inference that GIT and the United States

---

**17.** The purpose of a Miller Act payment bond is to protect subcontractors from nonpayment on certain types of government projects. 40 U.S.C. § 3131(b)(2) (2006); *Johnson Controls*, 713 F.2d at 1553–54 (citing *United States v. Munsey Trust Co.*, 332 U.S. 234, 241, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947)).

**18.** It is impossible to determine from the documents cited by plaintiffs whether GIT's bonds were Miller Act bonds or some other type of performance and payment bonds. *See* Ex. 1 at 1.41–1.42, Ex. 4 at 4.39, 4.43–4.48.

are in privity of contract. Unless some other theory of implied-in-fact contract privity can be supported by the facts alleged in the complaint, Counts I–III of the complaint must be dismissed.

### c. *Silverman* and Payment Liability

Plaintiffs also rely on *Silverman v. United States*, 679 F.2d 865 (Ct.Cl.1982), a decision of the Court of Claims, for their assertion that GIT had an implied-in-fact contract with the United States. Pls.' Resp. at 10–11. Plaintiffs state that "[e]vidence of direct Government payment obligations for subcontractor services can alone establish implied-in-fact privity," *id.* at 10, and proceed to briefly discuss *Silverman*, apparently as authority for this proposition. However, as plaintiffs acknowledge in their brief, the implied-in-fact contract in *Silverman* was *not* based solely on direct payment obligations of a federal agency to a subcontractor, but on an *oral promise* to a subcontractor and ratifying actions of a federal agency. *See* Pls.' Resp. at 11 (stating that in *Silverman*, "promises of Government payments triggered an implied-in-fact contract").

In *Silverman*, a federal official promised that if the subcontractor delivered his products directly to the agency, rather than to the financially-troubled prime contractor, the subcontractor would be paid. 679 F.2d at 868. It is that promise, and subsequent actions ratifying the oral contract between the United States and Mr. Silverman, that created an implied-in-fact contract. *Id.* at 870–71. The Court of Claims noted that Mr. Silverman would not have established the existence of an implied-in-fact contract with the United States if he had not received an oral promise of payment, a promise that was subsequently ratified by a direct payment to the subcontractor by the agency. *Id.* at 869–70. Thus, *Silverman* actually supports the government's position in this case that a subcontractor is not normally in privity of contract with the United States.

In this case, there has been no allegation of a promise made to GIT by any official of DOE that GIT would be paid directly by DOE because MK was having financial difficulties. Thus, *Silverman* lends no support, whatsoever, to plaintiffs' implied-in-fact privity argument. Plaintiffs cannot escape the binding precedent of *Johnson Controls* and its "otherwise in privity" factors by relying upon *Silverman*. The facts alleged in the complaint do not support the existence of an implied-in-fact contract, or privity of contract, between GIT and the United States.

### 3. "Agency" Contract Privity

 The final contract theory relied upon by plaintiffs is privity based on MK acting as an agent of the United States in the DOE project, so that GIT and the United States are in privity of contract. Compl. ¶¶ 3, 6(k), 8, 31, 41, 46, 48; Pls.' Opp. at 5; Pls.' Resp. at 14–17; Pls.' Sur–Reply at 2–4. Plaintiffs rely on two cases for their discussion of agency, neither of which is binding on this court.[19] Pls.' Resp. at 16–17 (citing *Northern v. McGraw–Edison Co.*, 542 F.2d 1336 (8th Cir.1976) and *Detroit Testing Lab., Inc.*, EBCA No. 153–1–81, 83–1 BCA ¶ 16458 (Mar. 7, 1983)). Both of these cases are inapposite.

*Detroit Testing* was yet another EBCA case where a flow-down disputes clause permitted the subcontractor to bring appeals of contracting officer decisions directly to the board. 83–1 BCA ¶ 16458. Thus, the circumstances of *Detroit Testing* are not analogous to this case and statements regarding "agency" in that case have no persuasiveness in this case. As for *Northern*, plaintiffs only rely on Northern for its pronouncement that an agency relationship is established by fac-

---

19. Plaintiffs do not discuss *Johnson Controls* in the context of their agency theory except in their sur-reply brief, even though defendant's opening brief of the government's motion to dismiss contains a detailed application of the test in *Johnson Controls* which determines whether a prime contractor is acting as an agent of the United States. Plaintiffs' arguments regarding the three agency factors in *Johnson Controls* have thus been waived. *See, e.g., Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed.Cir.2002) (stating that "parties must give a trial court a fair opportunity to rule on an issue other than by raising that issue for the first time in a reply brief"). Even if plaintiffs' cursory attempt to apply the three agency factors in *Johnson Controls* to this case had not been waived, plaintiffs have failed to persuade the court that defendant's analysis of the *Johnson Controls* agency factors, as they apply to this case, is inaccurate. *See infra.*

tual evidence rather than by the labels placed on the relationship. Pls.' Resp. at 16 (citing *Northern*, 542 F.2d at 1343 n. 7). The point is well-taken, but this principle does nothing to show that MK was acting as an agent of DOE in the DOE project, rather than acting as the prime contractor.

 Defendant relies on *Johnson Controls*, which provides the correct analytical framework for testing plaintiffs' agency theory. Def.'s MTD at 15–17; Def.'s MTD Reply at 6–10; Def.'s Sur–Reply at 1–3. The three-factor test for determining agency in *Johnson Controls* considers whether the prime contractor was

> (1) acting as a *purchasing* agent for the government, (2) the agency relationship between the government and the prime contractor was established by clear contractual consent, and (3) the contract stated that the government would be directly liable to the vendors for the purchase price.

713 F.2d at 1551 (citations omitted). All three elements of the test must be present to show agency, and, thus, to establish privity of contract between the subcontractor and the United States. *See, e.g., Nat'l Leased Hous. Ass'n v. United States*, 105 F.3d 1423, 1435–36 (Fed.Cir.1997). Privity of this type is described as being found in "rare circumstances." *Id.* at 1435.

 There is no reasonable inference that MK was an agent of the United States in the DOE project, because the three *Johnson Controls* factors are not present in the facts alleged by plaintiffs. In particular, plaintiffs have not pointed to any specific contract language that shows clear contractual consent by the United States that MK would function as an agent of the United States. Indeed, the contract documents reflect, instead, that MK was the prime contractor for the DOE project and that MK could enter into subcontracts to secure any necessary services. *See* Compl. Ex. 2 at 2.30–2.31, 2.45–2.47. Thus, the second *Johnson Controls* factor is absent in the facts alleged by plaintiffs. Furthermore, none of plaintiffs' allegations of fact regarding the payment account for the DOE project show that the United States was directly liable to

GIT for the price of its services. *See, e.g., Lockheed Martin I*, 50 Fed.Cl. at 563–64 (applying the *Johnson Controls* agency factors in the face of similar arguments, and finding that the "case law requires that the contract clearly state, not vaguely imply, that the Government is liable to the vendor"). Thus, the third *Johnson Controls* factor is absent as well.

Finally, nothing in the contracts or other documents relied upon by plaintiffs shows that MK functioned as a purchasing agent for the United States. The characteristics of the relationship between MK and the United States, which plaintiffs urge the court to accept as evidence of an agency relationship, are not at all unusual for a federal cost reimbursement contract. Indeed, if the approval and payment mechanisms of MK's contract with DOE were considered to establish an agency relationship, privity with the United States through the agency of a prime contractor would be the norm, rather than a rare occurrence. This is not the law. *See, e.g., US West Commc'ns Servs., Inc. v. United States*, 940 F.2d 622, 629 (Fed.Cir.1991) (noting that if too lax a definition of agency is employed, and the *Johnson Controls* factors are not applied correctly, "every federal agency contract governed by cost reimbursement principles would create an agency relationship"). There is no reasonable inference that may be derived from a reading of the complaint, and from the contract documents attached to the complaint, which supports plaintiffs' theory that MK was the agent of the United States for the DOE project, or that GIT was in privity of contract with the United States.

### 4. Dismissal of Counts I–III

The court holds, according all favorable inferences to the factual allegations of the complaint, that plaintiffs have failed to allege the necessary elements of privity of contract between GIT and the United States. In light of this holding, Counts I–III of the complaint must be dismissed for lack of jurisdiction. The court notes that the same result would obtain under the standard for RCFC 12(b)(6), because these counts of the complaint fail to state a claim upon which relief

may be granted. *See supra* note 2. Dismissal of Counts I–III is without prejudice.

## IV. Count IV of the Complaint, *i.e.*, the Pass–Through Claim, and Pending Motions

The court has fully resolved Defendant's Motion to Identify/Join the Real Parties in Interest and Motion to Dismiss Plaintiff Ground Improvement Techniques. In order to do so, the court reached the privity issue and, as a result, also grants Defendant's Motion to Dismiss in part, as to Counts I–III of the complaint. The court denies the remainder of Defendant's Motion to Dismiss, as to Count IV of the complaint, in part because defendant's challenge to this count of the complaint has little logical connection with the threshold real parties in interest issue.

The primary reason, however, for the court's decision to reject defendant's challenge to Count IV of the complaint at this time is that the real parties in interest for plaintiffs' claims should be given the opportunity, at the outset, to determine whether they choose to present and defend the claim set forth in Count IV of the complaint. The court notes that Count IV of the complaint benefits from more favorable jurisprudence which generally supports this court's consideration of the claims of a subcontractor against the United States when those claims are sponsored by the prime contractor. *See, e.g., Erickson Air Crane Co. of Wash., Inc. v. United States,* 731 F.2d 810, 814 (Fed.Cir. 1984) ("A party in interest whose relationship to the case is that of the ordinary subcontractor may prosecute its claims only through, and with the consent and cooperation of, the prime, and in the prime's name."). This type of suit is often called a "pass-through suit." *See, e.g., E.R. Mitchell Constr. Co. v. Danzig,* 175 F.3d 1369, 1370 (Fed.Cir.1999) (noting that the caselaw "permit[s] a prime contractor in certain circumstances to sue the government on behalf of its subcontractor, in the nature of a pass-through suit, for costs incurred by the subcontractor" (citing *Erickson,* 731 F.2d at 813)).

▮ Without the participation of the real parties in interest to this suit, the court believes it is inappropriate to reach the merits of defendant's challenges to Count IV of the complaint. The remainder of defendant's motion to dismiss is, in other words, premature. When and if the real parties in interest decide that they will participate in this suit, defendant may renew its arguments regarding the pass-through claim. To maintain the clarity of the docket in this case, it is preferable that defendant bring such arguments in a brief devoted solely to that purpose.

▮ Also pending before the court is a motion to intervene brought by the Plan Committee representing general unsecured creditors of MK in the MK bankruptcy litigation. The Plan Committee states that these creditors of MK have an economic interest in the outcome of the court's consideration of the pass-through claim brought by MK for the use and benefit of GIT (Count IV of the complaint). The court denies this motion at this time, because that motion is premature as well. When and if the real parties in interest participate in this suit pursuant to RCFC 17(a)(3), the Plan Committee must assess its position in light of the changed circumstances and may renew its request to intervene in this suit, if such an action is warranted at that time.

Finally, the court notes that plaintiffs recently filed a motion for sanctions, which is not yet fully briefed. In light of the court's ruling on the real party in interest issue, the court denies plaintiffs' motion for sanctions as premature. When and if the real parties in interest participate in this suit, plaintiffs are free to renew their request for sanctions, if they believe the rules of this court and relevant authority support the filing of such a motion.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that

(1) Defendant's Motion to Identify/Join the Real Parties in Interest and Motion to Dismiss Plaintiff Ground Improvement Techniques, filed April 3, 2012, is **GRANTED** as stated in this opinion;

(2) Defendant's Motion to Dismiss, filed May 29, 2012, is **GRANTED in part**, as to Counts I–III of the complaint;

(3) The Clerk's Office is directed to **DISMISS** Counts I–III of the complaint, without prejudice;

(4) Defendant's Motion to Dismiss, filed May 29, 2012, is **DENIED in part**, as to Count IV of the complaint, because this portion of the motion is premature;

(5) The court **DENIES** the Plan Committee's Motion to Intervene, filed August 14, 2012, because this motion is premature;

(6) Plaintiffs' Motion for Sanctions, filed November 15, 2012 is **DENIED**, because this motion is premature;

(7) In the event that the Secured Parties intend to participate in this litigation, plaintiffs shall **FILE a Notice** on or before **February 8, 2013**:

(a) identifying the method, among those set forth in RCFC 17(a)(3), by which the Secured Parties will participate in this suit;

(b) attaching documentary evidence confirming the participation of the Secured Parties; and

(c) attaching documentary evidence confirming the choice of counsel to represent the Secured Parties in this litigation;

(8) Unless plaintiffs fully satisfy the conditions set forth in subparagraphs 7(a)-(c) of the ordering language of this opinion, this case shall be **DISMISSED** without prejudice; and,

(9) The parties shall **FILE a Joint Status Report** on or before **February 25, 2013** recommending further proceedings in the subject matter.

