**Gary L. AARON, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 00–315C.**

United States Court of Federal Claims.

March 7, 2005.

Alan Banov, Washington, D.C., for plaintiffs.

Domenique Kirchner, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant. With her on the briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Kathryn A. Bleecker, Assistant Director, and Nicole Hogan, Attorney, Bureau of Prisons, of counsel.

## OPINION

BRUGGINK, Judge.

This is an action for recovery of overtime pay brought by over 100 employees of the Bureau of Prisons ("BOP") under the overtime provisions of the Federal Employees Pay Act, 5 U.S.C. §§ 5542, 5544, 5546 (2000 & Supp.2001), and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–216 (2000 & Supp.2001). Before the court is defendant's Motion to Dismiss, or in the Alternative, for Entry of Summary Judgment as to Plaintiff Randy L. Atterbury, on the ground that Mr. Atterbury's failure to disclose this lawsuit in a bankruptcy petition should preclude any recovery. Also pending is plaintiffs' Motion to Substitute Patti J. Sullivan, the bankruptcy trustee. For the reasons set out below, defendant's motion to dismiss is denied and plaintiffs' motion to substitute is granted.

## BACKGROUND

Mr. Atterbury's complaint in this action was filed on May 25, 2000. In his notice of consent form, which accompanied the complaint, Mr. Atterbury indicated that he sought additional pay for overtime work that he performed as a lieutenant for the BOP. On December 14, 2001, Mr. Atterbury and his wife filed a Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the District of Minnesota. They received a discharge on March 26, 2002. When they filed their schedule of assets, the Atterburys did not list unpaid overtime or a cause of action against the United States or the BOP.

On August 26, 2004, defendant filed the current motion, arguing that Mr. Atterbury lacked standing to bring pre-bankruptcy petition claims because they had become the property of the trustee in bankruptcy. In response, the Atterburys filed a motion on September 10, 2004, in the bankruptcy court to reopen the bankruptcy case to include the

claims in this case. Their amended petition valued the claim here at $15,000, of which $9,637.50 was listed as exempt under 11 U.S.C. 522(d)(5) (2004), leaving $5,362.50 potentially available to creditors. On September 15, 2004, the Bankruptcy Court granted that motion. One day later, the court appointed a successor trustee, Patti J. Sullivan. On December 13, 2004, the Bankruptcy Court approved the trustee's application to employ plaintiffs' attorney to continue the claim here. On December 21, 2004, plaintiffs moved to substitute Ms. Sullivan.

Defendant's current motion argues that judicial estoppel should bar all of Mr. Atterbury's claims, including those arising after bankruptcy was filed, because Mr. Atterbury failed to disclose the existence of the pre-bankruptcy claims in his bankruptcy proceeding. While there is no dispute that the Atterburys failed to include the claim pending here in their schedule of assets, plaintiffs assert that this was inadvertent rather than deliberate. In support, Mr. Atterbury offers a signed note to his current attorney in which he claims that he had notified his bankruptcy attorney about his pending BOP civil suit but that the attorney failed to include the claim in his bankruptcy petition. In a questionnaire submitted to defendant's counsel on April 8, 2003, Mr. Atterbury informed counsel that he had filed for bankruptcy. Plaintiffs contend that these actions are inconsistent with an attempt to deceive creditors.

### DISCUSSION

In bankruptcy, "all legal and equitable interests of the debtor" become part of the bankruptcy estate to be disposed of by the trustee in accordance with the bankruptcy laws. 11 U.S.C. § 541(a)(1) (2000). It is well established that the bankruptcy estate thus includes all "causes of action" owned by the debtor at the time of filing for bankruptcy. *Aldridge v. United States,* 59 Fed.Cl. 387, 389 (2004). Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to the Bankruptcy Code. 11 U.S.C. § 544(a)-(c). Because the trustee cannot abandon claims that are unknown to her, even at closure of the bankruptcy proceeding, such claims do not revert to the bankrupt but remain property of the estate. *Weiner v. United States,* 15 Cl.Ct. 43, 46 (1988). The trustee therefore becomes the real party in interest for purposes of RCFC 17(a).

Defendant urges that, even though the trustee owns the claim, plaintiffs should be estopped from substituting her. It concludes that plaintiffs are "playing fast and loose with the courts" and that permitting this substitution would harm the integrity of the judicial process.

Judicial estoppel is a matter of regional circuit law. *Minnesota Min. & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1302 (Fed.Cir.2002). The Federal Circuit has ruled that, "where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed." *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1565 (Fed.Cir.1996). Judicial estoppel, which may be invoked at the discretion of this court, is designed to prevent "the perversion of the judicial process." *Id.*

Defendant urges this court to adopt the narrower rule from the Fifth and Eleventh Circuit Courts of Appeal that a debtor can avoid estoppel when a claim is not disclosed during the bankruptcy proceeding only if "the debtor lacks knowledge of the undisclosed claim or has no motive for their concealment." *In re Superior Crewboats, Inc.,* 374 F.3d 330, 335 (5th Cir.2004); *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1286 (11th Cir.2002). Defendant argues that, since Mr. Atterbury stood to benefit from nondisclosure because his creditors would get nothing from the claim, this court should infer that Mr. Atterbury's action was neither inadvertent nor a mistake.

We decline to infer intentionality from this record. As the Sixth Circuit Court of Appeals has stated, judicial estoppel "should be applied with caution to avoid impinging on the truth-seeking function of the court." *Eubanks v. CBSK Fin. Group, Inc.,* 385 F.3d 894, 897 (6th Cir.2004). It is far

from clear that Mr. Atterbury's inconsistencies were "calculated to make a mockery of the judicial system." *Burnes,* 291 F.3d at 1285. In *Ryan Operations v. Santiam–Midwest Lumber Co.,* a building company failed to disclose a lawsuit commenced during its Chapter 11 bankruptcy proceedings. 81 F.3d 355 (3rd Cir.1996). The Third Circuit concluded that:

> [T]here is no basis in this case for inferring that [plaintiff] deliberately asserted inconsistent positions in order to gain advantage .... There is no evidence that the nondisclosure played any role in the confirmation of the [reorganization] plan or that disclosure of the potential claims would have led to a different result.

*Id.* at 363.

■ In this case, unlike *Superior Crewboats* and *Burnes,* Mr. Atterbury's nondisclosure did not make possible a conversion of the bankruptcy from Chapter 13 to Chapter 7. A particular reason for nondisclosure is not apparent. Contributing to the likelihood of mistake or inadvertence is the fact that Mr. Atterbury is one employee among hundreds involved in this series of de facto class actions. Such a back pay claim is by its very nature distinct from a contract or tort claim brought by a single individual. This court does not find it implausible that Mr. Atterbury's failure to note the omission of the claim from his bankruptcy petition was accidental. The relatively small potential award provides a different context than the "windfall" possibility alluded to in the context of the $2.5 million claim in *Superior Crewboats.*

Further, we decline to second guess the decision of the Bankruptcy Court. Even assuming the trustee recognizes the full extent of the claimed exemption, the creditors might stand to recover some amount. If we barred the claim in its entirety, the net effect would be to thwart the intent behind the decision to reopen the estate. While some courts have placed little weight on this consideration, *see e.g., Superior Crewboats,* 374 F.3d at 336 (refusing to substitute the trustee in a personal injury claim allegedly worth $2.5 million which was filed but not reported during the bankruptcy proceeding); *Barger v. City of Cartersville,* 348 F.3d 1289, 1295–97 (11th

Cir.2003) (refusing to reverse a district court's summary judgment order in an employment discrimination suit even though the bankruptcy court reopened the case), under the present circumstances, we are not concerned that permitting the claim to continue through the trustee would be a "perversion of the judicial process." *Data Gen. Corp.,* 78 F.3d at 1565.

We see no reason to penalize the trustee, and thereby the creditors, by disallowing substitution. Our analysis parallels that of the Sixth Circuit in *Parker v. Wendy's International, Inc.,* in which a trustee, after being informed of the existence of an undisclosed Title VII discrimination case, moved for the reopening of the bankruptcy case and moved to intervene. 365 F.3d 1268 (2004). Like the trustee in *Parker,* Ms. Sullivan became the real party in interest when the bankruptcy petition was filed. Post-petition conduct by Mr. Atterbury, including failure to disclose an asset, does not relate to the merits of the claim. *See id.* at 1272. Ms. Sullivan "has never abandoned [the claim and] never took an inconsistent position under oath with regard to the claim." *Id.* Therefore, she should not be estopped from substitution as the real party in interest.

### CONCLUSION

Defendant's motion to dismiss is denied. Plaintiffs' motion to substitute is granted.