NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GROUND IMPROVEMENT TECHNIQUES, INC., MK FERGUSON COMPANY, FOR THE USE AND BENEFIT OF GROUND IMPROVEMENT TECHNIQUES, INC.,**
*Movants-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**v.**

**PNC BANK, N.A., FIREMAN'S FUND INSURANCE COMPANY, R.N. ROBINSON & SONS, INC., SECURED CREDITORS OF GROUND IMPROVEMENT TECHNIQUES, INC.,**
*Plaintiffs-Appellees*

---

2013-5110

---

Appeal from the United States Court of Federal Claims in No. 12-CV-0057, Senior Judge Lynn J. Bush.

---

Decided: July 28, 2015

---

STEVEN R. SCHOOLEY, Schooley Law Firm, Orlando, FL, argued for movants-appellants.

JEFFREY A. REGNER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM.

ROBERT G. BARBOUR, Watt, Tieder, Hoffar & Fitzgerald, L.L.P., McLean, VA, for plaintiffs-appellees.

_____

Before PROST, *Chief Judge,* BRYSON and DYK, *Circuit Judges.*

PROST, *Chief Judge.*

Ground Improvement Techniques, Inc. ("GIT") appeals decisions by the U.S. Court of Federal Claims holding that GIT is not the real party in interest, granting the real party in interest's motion for substitution and denying GIT's motion to continue as plaintiff, and dismissing certain of GIT's claims for lack of jurisdiction. For the reasons set forth below, we affirm the decisions of the U.S. Court of Federal Claims.

BACKGROUND

In 1983, the Department of Energy ("DOE") entered into a prime contract with Morrison Knudson Company, Inc. (the "MK prime contract") for multiple projects across the nation relating to the remediation of uranium mill tailings. The MK prime contract was subsequently passed from Morrison Knudson Company, Inc. to MK-Ferguson Company ("MK"). On March 1, 1995, MK entered into a subcontract with GIT (the "GIT subcontract") for work on particular uranium mill sites located in Slick Rock, Colorado. The GIT subcontract was specifically titled "CONSTRUCTION SUBCONTRACT" and was

identified as being "[u]nder DOE Prime Contract No. DE-AC04-83AL 18796," the MK prime contract. J.A. 89. The DOE provided its consent for MK and GIT to enter into the GIT subcontract. In doing so, the DOE contracting officer stated that its consent "shall neither create any obligation of the Government to, or privity of contract with the subcontractor." J.A. 362.

On September 18, 1995, with the consent of DOE, MK terminated GIT for default. That termination became the subject of multiple years of litigation between MK and GIT in the U.S. District Court for the District of Colorado (the "GIT-MK litigation"). During the course of the GIT-MK litigation, GIT filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Western District of Pennsylvania, and GIT's interest the GIT-MK litigation became an asset of the bankruptcy estate. As part of the bankruptcy proceeding, GIT entered into a "Reorganization Plan," which stated that "GIT will assign . . . any and all claims, causes of action, right, title, and interest in and to the [GIT-MK litigation]" to five of its secured creditors: PNC Bank ("PNC"), Fireman's Fund Insurance Company ("Fireman's Fund"), Holland & Knight LLP ("Holland & Knight"), The Law Offices of Frederick Huff ("Mr. Huff"), and R.N. Robinson & Sons, Inc. ("Robinson") (collectively, the "Secured Parties"). J.A. 418. The Reorganization Plan further provided that "[i]f the net proceeds of the MK case are sufficient to satisfy the claims of [the Secured Parties] in full, the remaining proceeds shall be distributed to unsecured creditors on a pro rata basis." J.A. 418–19. In a subsequent one-page "Clarifying Order," the Pennsylvania bankruptcy court stated that "the Secured Parties may either direct the Debtor to assign to the Secured Parties or their designee all of the Debtor's rights and interest in the [GIT-MK litigation] or, at their option, continue prosecution of the [GIT-MK litigation] in GIT's name in lieu of an assignment." J.A. 479. The Secured Parties elected to continue litigation against MK in the

name of GIT, rather than directing GIT to assign its claims against MK to the Secured Parties. In addition to the Reorganization Plan, GIT and the Secured Parties also entered into an "Agreement Respecting Litigation," which stated that, after payment of litigation costs and $125,000 to the unsecured creditors as required by the Reorganization Plan, the proceeds not in excess of the secured creditors' claims would be distributed first in part to the Secured Parties and then in part to Mr. Kinghorn, an equity holder in GIT. J.A. 431–34. As provided by the Reorganization Plan, any amounts in excess of the Secured Parties' claims would go to the unsecured creditors. J.A. 418–19. Neither the Agreement Respecting Litigation nor the Reorganization Plan provided for distribution of any proceeds to GIT itself. The agreement also apportioned voting interests regarding the decisions to be made pertaining to the GIT-MK litigation, and specified that choice of counsel required 70% of the voting interests and choice of conduct required 75% of the voting interests. J.A. 432–34.

GIT eventually obtained a judgment against MK in the GIT-MK litigation for wrongful termination. However, the judgment was only partially satisfied, as MK, too, had filed for bankruptcy in the U.S. Bankruptcy Court for the District of Nevada. The unsatisfied portion of GIT's judgment against MK, and post-judgment interest, were claims to be administered in MK's bankruptcy. The Nevada bankruptcy court required MK to submit a certified claim with DOE to attempt to satisfy GIT's claims against MK related to the DOE project. Although MK did so, the certification was contested as inadequate. The Nevada bankruptcy court eventually ordered GIT itself to file GIT's claims with DOE's contracting officer under MK's name, and to certify its own claims. GIT then filed both a certified claim in MK's name and a certified claim in its own name with the DOE contracting officer. When GIT received no response from the contracting officer, GIT

filed a "deemed denied" suit in the U.S. Court of Federal Claims. GIT's suit involved four breach of contract counts against the DOE: Counts I-III in GIT's own name, and Count IV in MK's name, for the benefit of GIT.

On December 5, 2012, the Court of Federal Claims issued a decision addressing two issues raised by the parties. *See Ground Improvement Techniques, Inc. v. United States*, No. 12-57 C, 108 Fed. Cl. 162 (Fed. Cl. Dec. 5, 2012) ("*GIT I*"). First, the court agreed with DOE that GIT lacked privity with the government, and therefore dismissed Counts I–III brought in GIT's own name against the government for lack of subject matter jurisdiction. *Id.* at 171–83. Second, the court agreed with DOE that the Secured Parties, not GIT, were the real parties in interest for all four counts, as GIT's bankruptcy had transferred all its claims in the GIT-MK litigation to the Secured Parties. *Id.* at 169–71. Following its decision, the court denied GIT's motion for reconsideration, but given that Count IV still remained, ordered briefing from both GIT and the Secured Parties addressing if and how—under the court's joinder, ratification, and substitution rules—the suit would go forward on Count IV. *See Ground Improvement Techniques, Inc. v. United States*, No. 12-57 C, (Fed. Cl. May 3, 2013) ("*GIT II*"). In response to the court's order, GIT sought to continue as plaintiff, either through ratification (supported by both Mr. Huff, one of the Secured Parties, and Mr. Kinghorn, an equity-holder) or through joinder. For their part, three of the Secured Parties (PNC, Fireman's Fund, and Robinson) sought to be substituted as the sole plaintiffs in the suit.[1] On April 30, 2014, the court issued a decision

---

[1] Together, these three Secured Parties held the requisite voting interests to make decisions regarding the GIT-MK case, as set forth in the Agreement Respecting Litigation. J.A. 432–34.

substituting PNC, Fireman's Fund, and Robinson as the sole plaintiffs in the suit and denying GIT's request to continue as plaintiff. *See Ground Improvement Techniques, Inc. v. United States*, No. 12-57 C, 2014 WL 1711004 (Fed. Cl. Apr. 30, 2014) ("*GIT III*"). The court subsequently directed entry of judgment pursuant to Rule 54(b) of the Rules of the U.S. Court of Federal Claims ("RCFC").

GIT appealed to this court. Specifically, GIT seeks reversal of: (i) the determination that GIT is not the real party in interest; (ii) the substitution of PNC, Fireman's Fund, and Robinson as plaintiffs, and the denial of GIT's request to continue as plaintiff; and (iii) the dismissal of Counts I–III for lack of privity. PNC, Fireman's Fund, and Robinson moved, with the government's consent, for voluntary dismissal of the appeal and the return of jurisdiction to the Court of Federal Claims; GIT opposed. We requested briefing from all three parties, and for the reasons explained below, affirm the decisions of the Court of Federal Claims.

## DISCUSSION

"This court reviews judgments of the Court of Federal Claims to determine whether they are premised on clearly erroneous factual determinations or otherwise incorrect as a matter of law." *Wheeler v. United States*, 11 F.3d 156, 158 (Fed. Cir. 1993). The court below addressed the real party in interest question under RCFC 12(b)(6) and the privity question under both RCFC 12(b)(1) and 12(b)(6). We review the court's determinations under both rules de novo. *Id.* The court addressed the substitution and joinder questions under RCFC 19 and 20. While we have not yet stated whether such determinations are reviewed de novo or for abuse of discretion, *United Keetowah Band of Cherokee Indians of Okla. v. United States*, 480 F.3d 1318, 1324 (Fed. Cir. 2007), we need not decide

the question here because our outcome would be the same under either standard.

I

We begin by addressing the real party in interest question. Under the applicable rule of the Court of Federal Claims, "[a]n action must be prosecuted in the name of the real party in interest." RCFC 17(a)(1). The Court of Federal Claims has defined a real party in interest as "the party that 'possesses the right to be enforced.'" *Grass Valley Terrace v. United States*, 69 Fed. Cl. 543, 546 (2006) (quoting *Mitchell Food Prods., Inc. v. United States*, 43 Fed. App'x. 369, 369 (Fed. Cir. 2002)); *see also Crone v. United States*, 538 F.2d 875, 882 (Ct. Cl. 1976) (describing the real party in interest as the party "to whose present, personal benefit a money judgment may run"). Failure to prosecute an action in the name of the real party in interest results in dismissal of the claim, unless cured. *Aldridge v. United States*, 59 Fed. Cl. 387, 390 (Ct. Cl. 2004); *Norega v. United States*, 113 F. Supp. 463, 464 (Ct. Cl. 1953).

The Court of Federal Claims held that GIT's bankruptcy effected a transfer of GIT's claims related to the DOE project to the Secured Parties, and that the Secured Parties were therefore the real parties in interest for all of GIT's claims in this suit.[2] *GIT I*, 108 Fed. Cl. at 171–83. For the reasons explained below, we agree.

---

[2] The Court of Federal Claims held this to be true regardless of "whether the claims are described as claims against MK or against the United States," as all of GIT's claims were founded on either the unsatisfied judgment and post-judgment interest against MK obtained by GIT, or additional, related claims against MK and/or the United States which arise from the DOE project. *GIT I*, 108 Fed. Cl. at 170. The court therefore concluded, and

It is undisputed that when GIT filed for bankruptcy, its assets—including its claims in the GIT-MK litigation—became part of the bankruptcy estate. *See* 11 U.S.C. § 541(a); *Aaron v. United States,* 65 Fed. Cl. 29, 31 (Fed. Cl. 2005) ("It is well established that the bankruptcy estate thus includes all 'causes of action' owned by the debtor at the time of filing for bankruptcy."). The central question in this case, therefore, is whether the events during bankruptcy transferred GIT's claims from its bankruptcy estate to the Secured Creditors. Based on the plain language of the documents involved in the bankruptcy proceedings, the answer is clearly yes.

Most significantly, GIT's Reorganization Plan states that: "GIT will assign . . . any and all claims, causes of action, right, title, and interest in and to the [GIT-MK litigation]" to the Secured Parties and provides for the distribution of proceeds in excess of the Secured Parties' claims to the unsecured creditors. J.A. 418. A debtor submitting such a plan only retains the power over claims or interests if the plan expressly states so. *See* 11 U.S.C. § 1123(b)(3)(B). Here, not only did the Reorganization Plan fail to include any such reservation clause, the plan instead specifically passed GIT's rights in the GIT-MK litigation over to the Secured Parties.

Additional documents involved in the proceedings confirm the transfer of claims in the GIT-MK litigation to the Secured Parties. For example, under the Agreement Respecting Litigation, the proceeds from the GIT-MK litigation were to be distributed to the bankruptcy estate and the creditors, but not to GIT itself. J.A. 432–42. And

---

we agree, that all of GIT's claims in this case "arise from and are inseparable from" those that GIT brought against MK in the GIT-MK litigation, and that the real party in interest is the same regardless of how the claims are described. *Id.*

the bankruptcy court's Clarifying Order specified that, pursuant to the transfer clause in the Reorganization Plan, "the Secured Parties may either direct the Debtor to assign to the Secured Parties or their designee all of the Debtor's rights and interest in the [GIT-MK litigation] or, at their option, continue prosecution of the [GIT-MK litigation] in GIT's name in lieu of an assignment." J.A. 479. Together, the Reorganization Plan, Agreement Respecting Litigation, and Clarifying Order all make clear that the Secured Parties had replaced GIT as the ones "to whose present, personal benefit a money judgment" from the GIT-MK litigation runs. *Crone*, 538 F.2d at 882.

GIT's arguments to the contrary are unpersuasive. First, GIT's reading of the Clarifying Order borders on the incredible. The Clarifying Order clearly states that "the *Secured Parties*" could continue prosecution of the GIT-MK litigation in GIT's name in lieu of an assignment. J.A. 479 (emphasis added). To support its claim that GIT continued to control the litigation, GIT simply replaces "the Secured Parties" with "GIT." *See* Corrected Appellants' Br. 21–22 ("It is clear from the language of the Order that GIT could continue 'prosecution of the MK Case in GIT's name *in lieu of an assignment*.'"). This overt misreading of the court's order cannot support GIT's claim.

Second, GIT's focus on the language "will assign" from the Reorganization Plan, J.A. 479, and the fact that "[n]o assignment or transfer was ever consummated," Corrected Appellants' Br. 22, gets it no further. Of course there was no assignment; as permitted by the Clarifying Order, the Secured Parties elected the option of continuing litigation in the name of GIT, rather than having GIT directly assign its claims over to the Secured Parties. GIT's complaint that there was never a formal assignment is beside the point.

Finally, GIT's argument that it remained a "debtor-in-possession" with both the power to pursue the GIT-MK litigation claims as well as the fiduciary obligation to its unsecured creditors to do so also fails. While a debtor-in-possession may have most of the powers of a bankruptcy trustee to pursue claims on behalf of the bankruptcy estate when the bankruptcy proceedings are initiated, 11 U.S.C. § 1107(a), the bankruptcy estate—and accordingly, the debtor-in-possession's authority to pursue claims— ceases to exist upon confirmation of a reorganization plan, *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008). Thus, while GIT may have initially possessed rights to pursue the claims in the GIT-MK litigation, those rights were extinguished upon the Pennsylvania bankruptcy court's confirmation of the Reorganization Plan. This conclusion is not obviated by the GIT's citation to snippets from the Reorganization Plan and other places where the bankruptcy court continued to refer to GIT as a debtor-in-possession. The court's use of such language appears merely to be boilerplate, and in any event, cannot overcome the strong evidence showing that a transfer of rights occurred in this case.

For all of these reasons, we agree with the Court of Federal Claims that GIT's bankruptcy effected a transfer of GIT's claims related to the DOE project to the Secured Parties, and that the Secured Parties, and not GIT, are the real parties in interest in this case.

## II

When it has been determined that a plaintiff is not the real party in interest, the court must allow the plaintiff a reasonable amount of time to cure the defect through substitution, joinder, or ratification. *See* RCFC 17(a)(3). Here, the Court of Federal Claims requested briefing from both GIT and the Secured Parties regarding how to move forward in light of the real parties in interest issue. The parties responded with conflicting proposals:

while GIT sought to continue as a plaintiff (supported by ratifications of Mr. Huff and Mr. Kinghorn), three of the Secured Parties (PNC, Fireman's Fund, and Robinson) sought to be substituted as the sole plaintiffs in the suit with the obligation to distribute the proceeds in accordance with the Agreement Respecting Litigation and the Reorganization Plan. The Court of Federal Claims opted for substitution, finding that PNC, Fireman's Fund, and Robinson "possess[ed] the voting power to make operating decisions for plaintiffs in this suit" and that joinder of GIT was inappropriate "for the simple reason that post-bankruptcy GIT has no financial interest in claims arising from the DOE project." *See GIT III*, 2014 WL 1711004, at *6–7.

On appeal, GIT argues that the Court of Federal Claims should have permitted GIT's continued presence as a ratified plaintiff under either the rules governing required joinder, RCFC 19, or permissive joinder, RCFC 20. According to GIT, it must remain a plaintiff in this suit in order "to ensure the procedural integrity of the action and to protect the rights and interest of Huff, Kinghorn, and the unsecured creditors." Corrected Appellants' Br. 42. In response, PNC, Fireman's Fund, and Robinson argue that their substitution is fully supported by the Agreement Respecting Litigation, and that the requirements for neither required nor permissive joinder are met here.

We agree with PNC, Fireman's Fund, and Robinson. Most important to our conclusion is the Agreement Respecting Litigation, which was signed by all five of the Secured Parties (including Mr. Huff) as well as Mr. Kinghorn. GIT has not disputed that, pursuant to the agreement's terms, PNC, Fireman's Fund, and Robinson together hold the requisite 70% and 75% interests to control decisions regarding choice of counsel and litigation conduct, respectively. J.A. 431–42. Mr. Huff and Mr. Kinghorn, pursuant to terms to which they agreed, do not

hold enough interest to direct such decisions. Given that Mr. Huff and Mr. Kinghorn have expressly signed away their control, GIT's argument, premised as it is on protecting the rights of Mr. Huff and Mr. Kinghorn, loses its force. As the Court of Federal Claims rightly held: "Just because one of the Secured Parties (Mr. Huff) and an equity holder in GIT (Mr. Kinghorn) might be able to benefit from a judgment won in this court does not mean that Mr. Kinghorn or Mr. Huff may flout the Agreement [Respecting Litigation] and its terms." *GIT III*, 2014 WL 1711004, at *5.

GIT's argument that it must continue as plaintiff in order to protect the rights of the unsecured creditors also fails, this time because of the provisions of the Reorganization Plan. In order for a bankruptcy court to confirm a debtor's reorganization plan, the debtor must show that the reorganization plan adequately protects the rights and interests of the unsecured creditors. *See* 11 U.S.C. § 1129(b)(2)(B). Here, GIT's Reorganization Plan addresses the interests of the unsecured creditors in multiple places. Most particularly, the plan requires that creditors holding unsecured claims be paid on a *pro rata* basis in the following manner: (1) the first $125,000 of the net proceeds of the GIT-MK litigation; (2) the net proceeds of the GIT-MK litigation, if any, remaining after the claims of the Secured Parties are satisfied in full; (3) up to $120,000 to be paid by GIT's shareholders over a period of five years; and (4) a dividend of $600,000 to be paid by GIT, with payments made on an annual basis over a period of five years. J.A. 423. The Reorganization Plan thus already sets forth the ways in which the claims of the unsecured creditors shall be satisfied.

At its core, GIT's argument is that, "because a significant portion of the Secured Creditors claims have been disbursed, there is no incentive for the Secured Creditors

to maximize recovery against the government." Corrected Appellants' Br. 42. While this may or may not be true,[3] it is not reason to avoid the plain language of the governing documents in this case.

We also agree with the Court of Federal Claims that joinder of GIT is not appropriate under either RCFC 19 or 20. Under RCFC 19, a person must be joined as a party if that person "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." RCFC 19(a)(1)(B)(i). Under RCFC 20, persons may be joined as a party if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all plaintiffs will arise in the action." RCFC 20(a)(1).

Here, as the Court of Federal Claims observed, GIT no longer has any "financial interest in claims arising from the DOE project. Those claims were transferred to the Secured Parties in the GIT bankruptcy litigation." *GIT III*, 2014 WL 1711004, at *7. GIT, therefore, does not "claim[] an interest relating to the subject of the action" as required by RCFC 19 or have "any right to relief" as required by RCFC 20. Thus, neither mandatory nor permissive joinder is appropriate.

---

[3]    It remains unclear to us which of the multitude of competing bankruptcy claims have been fully satisfied, which have been partially satisfied, and which remain outstanding. Thus, even if we were inclined to elevate GIT's fairness concerns over the language of the governing documents (which we are not), we are unable to fully analyze GIT's argument.

III

The Court of Federal Claims dismissed Counts I–III (brought in GIT's own name) for lack of privity between GIT and the government, and therefore lack of jurisdiction. *GIT I*, 108 Fed. Cl. at 172–82.[4] In doing so, the court examined and found lacking GIT's many arguments based on theories of direct contract, implied-in-fact contract, and agency. On appeal, GIT again argues that privity between itself and the government exists under multiple theories. Like the Court of Federal Claims, we reject GIT's arguments.

Pursuant to the Tucker Act, the Court of Federal Claims has jurisdiction over claims against the government involving "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Similarly, the Contract Disputes Act provides that "a contractor may bring an action directly on the claim in the United States Court of Federal Claims." 41 U.S.C. § 7104(b)(1). Because a subcontractor ordinarily lacks privity with the government, the Court of Federal Claims generally lacks jurisdiction over claims brought by a subcontractor

---

[4] Although the Court of Federal Claims viewed GIT's claims against the government as indistinct from those transferred to the Secured Parties in GIT's bankruptcy, the court nonetheless went on to consider whether, "to the extent that GIT has alleged that it possessed distinct claims against the United States," there was privity of contract between GIT and the government such that subject matter jurisdiction over such claims existed. *GIT I*, 108 Fed. Cl. at 171–72. Because we hold that GIT is not in privity with the government, we have no occasion to consider whether GIT, which we have held is no longer a debtor-in-possession, has any standing to assert a claim against the government.

against the government, though there are some exceptions. *See J.G.B. Enters., Inc. v. United States*, 497 F.3d 1259, 1261 (Fed. Cir. 2007) ("A subcontractor typically is unable to seek relief against the United States on a dispute over the contract since it is not a party to the contract and thus lacks privity with the United States."); *United States v. Johnson Controls, Inc.*, 713 F.2d 1541 (Fed. Cir. 1983) (concluding that the case did not "fall within any recognized exception to the well-entrenched rule that a subcontractor cannot bring a direct appeal against the government"). Whether a contract exists is a mixed question of law and fact, but where "the parties do not dispute the relevant facts, the privity issue reduces to a question of law, which we review *de novo*." *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998).

Here, it is indisputable that no direct contract between GIT and the government exists. There are two relevant contracts in this case. The first is the MK prime contract, which was entered into between MK and DOE more than a decade before GIT's involvement in the project. The second is the GIT subcontract, which plainly states that it is a "SUBCONTRACT" between MK and GIT and was made "[u]nder DOE Prime Contract No. DE-AC04-83AL 18796," the MK prime contract. J.A. 89. Given the plain language of these contracts, GIT admits, as it must, that it does not have a direct contract with the government. *See* Corrected Appellants' Br. 39 ("[T]he GIT contract is not expressly with the Government . . . .").

There is also no implied-in-fact contract between GIT and the government. "An implied-in-fact contract is one 'founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998) (quoting *Baltimore & Ohio R.R. Co. v*

*United States*, 261 U.S. 592, 597 (1923)); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) ("An implied-in-fact contract requires findings of: 1) mutuality of intent to contract; 2) consideration; and 3) lack of ambiguity in offer and acceptance."). Here, GIT has failed to show that there was a meeting of the minds between the government and GIT that an implied-in-fact contract existed. To the contrary, the DOE contracting offer expressed the opposite intent by specifically disclaiming "any privity of contract with the subcontractor" when providing its consent for the GIT subcontract. J.A 362. Moreover, there cannot be an implied-in-fact contract between GIT and the government when, as here, there are already two express contracts governing the same subject matter for which GIT now seeks to establish an implied contract. *See Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (en banc) ("It is well settled that the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract.").

GIT's leading argument for the existence of privity in this case is based on drawing factual analogies to a decision by the Energy Board of Contract Appeals ("EBCA"), *McMillan Bros. Constr.*, EBCA No. 328–10–84, 86–3 B.C.A. P. 17179, 1986 WL 20168 (July 11, 1986). But decisions of the EBCA are not binding on this court. Rather, we examine questions relating to privity under our own jurisprudence. Here, as we held in *Johnson Controls*, GIT has failed to show that this case "fall[s] within any recognized exception to the well-entrenched rule that a subcontractor cannot bring a direct appeal against the government." 713 F.2d at 1550.

Specifically, in *Johnson Controls*, we recognized that privity between a subcontractor and the government may exist if the prime contractor was acting as an agent of the government. *Id.* at 1551–52. However, we rejected in

that case a subcontractor's claim based on agency privity because the following three "crucial factors" were missing:

> The prime contractor was (1) acting as a purchasing agent for the government, (2) the agency relationship between the government and the prime contractor was established by clear contractual consent, and (3) the contract stated that the government would be directly liable to the vendors for the purchase price.

*Id.* at 1551.

These three factors are missing in this case as well. Here, the relevant contracts did not state that MK was acting as the purchasing agent for DOE, did not provide "clear contractual consent" for such relationship, and did not state that DOE would be directly liable to GIT for the contract price. Specifically, with respect to the first two factors, the MK prime contract specified that MK itself—not DOE—was to enter into subcontracts. J.A. 193–95. And it made clear that MK was responsible, not simply for contracting with someone else to work for DOE, but actually performing work under the contract, including "furnish[ing] all labor, material, facilities, services, equipment, superintendence and administration necessary to accomplish engineering, design, construction, and inspection services." J.A. 178–79. With respect to the third factor, the GIT subcontract provided that MK, not DOE, would pay GIT the price for the subcontract. J.A. 130. And, contrary to GIT's argument, the fact that the DOE posted a letter of credit to ensure payment, and directed payment through a dedicated bank account, is not enough to establish an agency relationship between MK and DOE here.

GIT argues that "the totality of the individual contractual provisions present a principal-agent relationship," pointing in support to clauses requiring MK to obtain DOE approval for certain actions. But the need for

MK to obtain DOE approval does not create an agency relationship. As we observed in *Johnson Controls*, "[i]t is true that the government here has retained a great deal of control over the actions of [the contractor] in its dealings with the subcontractors on the project. But it is also apparent that the government meant to use [the contractor] as a buffer between it and the claims of subcontractors." 713 F.2d at 1552. In sum, GIT has failed to establish privity with DOE under an agency theory.

GIT has also failed to establish privity with DOE under four additional factors discussed in *Johnson Controls*, sometimes referred to as the "otherwise in privity" test. *Id.* at 1552–53; *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1139 (6th Cir. 1996). Those four factors, which led to the conclusion that a direct subcontractor appeal was not permitted in *Johnson Controls*, are:

> (1) the government and [subcontractor] never entered into a direct contractual relationship; (2) the 'ABC' clause, contained in both the prime contract and the subcontract, specifically disclaimed a contractual relationship between the government and [subcontractor]; (3) [the contractor] was required to obtain a Miller Act payment bond, which provided a recourse by the subcontractor other than a direct appeal; and (4) there is no provision in any of the contract documents that clearly authorizes a direct appeal by a subcontractor.

713 F.2d at 1552–53.

On balance, these four factors weigh against GIT's direct subcontractor appeal in this case as well. With respect to the first factor, no direct contractual relationship between GIT and the government exists, for the reasons already explained. With respect to the second factor, GIT is correct that there is no contractual provision expressly disclaiming privity between GIT and the

government. But the DOE, in providing its consent for the GIT subcontract, specifically stated that there would be no privity of contract with the subcontractor. J.A. 362. And although this disclaimer was not written into the contract, as it was in *Johnson Controls*, its presence nonetheless weighs against a finding of privity. With respect to the third factor, it is true that GIT did not obtain Miller Act payment bonds as a substitute for a direct remedy against the government, as the subcontractor did in *Johnson Controls*. But *Johnson Controls* does not state that the absence of Miller Act bonds *creates* jurisdiction over direct subcontractor appeals. And in any event, the fourth factor—whether any contractual provision "clearly authorizes a direct appeal by a contractor"—weighs against GIT's direct action against the government in this case. Here, the "Disputes" clause upon which GIT relies says merely that the applicable substantive law is the "body of law applicable to procurement of goods and services by the Government." J.A. 131. As already explained, the rule under the relevant "body of law" is that "[a] subcontractor typically is unable to seek relief against the United States on a dispute over the contract since it is not a party to the contract and thus lacks privity with the United States." *J.G.B. Enters.*, 497 F.3d at 1261. GIT has failed to show why that rule does not apply here.

We therefore agree with the Court of Federal Claims that privity, and thus jurisdiction, is lacking as to GIT's Counts I–III brought in its own name against the government. We do not address Count IV, brought in MK's name for the benefit of GIT, which still remains in this case.

CONCLUSION

For the foregoing reasons, we affirm the decisions by the Court of Federal Claims that: (i) GIT is not the real party in interest for the claims in this suit; (ii) PNC,

Fireman's Fund, and Robinson should be substituted as sole plaintiffs in this suit; and (iii) there is no privity between GIT and the government, and thus no jurisdiction over GIT's Counts I–III brought in GIT's own name against the government.  Given our decision on the merits, we deny as moot the motion by PNC, Fireman's Fund, and Robinson for voluntary dismissal of this appeal.  We note that our decision does not address any remaining issues with respect to Count IV, which we leave for further consideration by the Court of Federal Claims.

**AFFIRMED**